UNITED STATES of America, Appellee,

v.

Thomas LUONGO, Defendant, Appellant.

No. 93–1399.

United States Court of Appeals,
First Circuit.

Submitted Nov. 11, 1993.

Decided Dec. 8, 1993.

William A. Brown, Boston, MA, on brief for appellant.

A. John Pappalardo, U.S. Atty., and Duane J. Deskins, Asst. U.S. Atty., Boston, MA, on brief, for appellee.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

This appeal requires us not only to resolve defendant's claim of multiplicitousness, but also to answer a question of first impression in this circuit concerning the special assess-

ment mandated by 18 U.S.C. § 3013 (1988). Concluding, as we do, that the indictment is not multiplicitous and that the court below appropriately imposed the special assessment on a "per count" basis, rather than on some broader basis (say, "per scheme" or "per defendant"), we affirm.

## I

### Background

The indictment undergirding this appeal stemmed from defendant-appellant Thomas Luongo's communications with an elderly man, Albert Tompane, between August 1990 and April 1991. Using the name Keith Symonds, appellant contacted Tompane by telephone for the purpose of soliciting money in exchange for lucre or property that appellant promised to provide in the future. Appellant directed Tompane to send him funds by means of wire transfers. As a result, Tompane wired money from Massachusetts to Rhode Island on numerous occasions. Appellant then pocketed the proceeds but did not send Tompane the promised consideration.

Shortly after the grand jury returned an indictment, appellant pled guilty to fifty-seven counts of wire fraud.[1] The district court sentenced him to serve thirty-six months in prison, followed by thirty-six months of su-

pervised release. The court also ordered him to pay a $2,850 special assessment and $5,000 toward restitution.[2] Luongo appeals from the special assessment.

## II

### Multiplicity

■ Appellant's initial contention is that, notwithstanding his plea of guilty to fifty-seven counts of wire fraud,[3] the indictment against him suffered from a fatal strain of multiplicity. Consequently, he maintains that his offenses amounted to only a single violation of 18 U.S.C. § 1343 and, therefore, merit only a single $50 special assessment. This claim pirouettes around our opinion in *United States v. Lilly,* 983 F.2d 300 (1st Cir.1992).[4]

In *Lilly,* we held an indictment charging a defendant with, *inter alia,* twenty-nine counts of bank fraud under 18 U.S.C. § 1344 to be multiplicitous. Since the defendant defrauded a single bank of a single loan through a single scheme, albeit by submitting twenty-nine false mortgages to the lender in perpetrating that scheme, that portion of the indictment "was more comfortably characterized as a single execution of a scheme rather than as 20–some–odd separate executions of a scheme." *Id.* at 303. Appellant asseverates that he, too, defrauded a single victim

---

1. The original indictment charged appellant with causing seventy-eight unlawful wire transfers, involving $45,525. A superseding indictment charged him with causing fifty-seven unlawful wire transfers. At the change-of-plea hearing, the prosecutor stated that these fifty-seven transfers involved $29,201. The presentence report used the same dollar amount. Be that as it may, the figures specified in the fifty-seven counts, when added together, aggregate $31,180.

2. The court levied the special assessment under a statute that reads in pertinent part:

   \* \* \* \* \* \*

   (a) the court shall assess on any person convicted of an offense against the United States—

   \* \* \* \* \* \*

   (2) in the case of a felony—
   (a) the amount of $50 if the defendant is an individual; ...

   18 U.S.C. § 3013(a) (1988). In this case, the $2,850 special assessment represents the $50 sum mentioned in the law, multiplied by the fifty-seven counts of conviction.

3. The statute of conviction provides in relevant part that:

   Whoever, having devised ... any scheme or artifice to defraud, or for obtaining money ... by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [punished as provided by law]....

   18 U.S.C. § 1343 (Supp.1990).

4. Appellant also tries to derive sustenance from the fact that the lower court imposed a single 36–month prison term and a unitary term of supervised release. For our part, those features of the sentence do not portend multiplicity. Absent clear language indicating a contrary intent, it is to be presumed that sentences imposed on more than one count at the same time are to run concurrently. *See, e.g., United States v. Schultz,* 384 F.2d 374, 375 (5th Cir.1967).

through a single scheme, necessitating that we merge the fifty-seven counts in the superseding indictment and construe them as one. We disagree.

The principal flaw in appellant's construct is that he and Lilly were charged under different statutes and, therefore, the cases are not fair congeners. *Lilly* dealt with bank fraud, not wire fraud. This is no mere scrivener's discrepancy, for the *Lilly* court held that the bank fraud statute, 18 U.S.C. § 1344, could not be construed in *pari passu* with the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. *See Lilly,* 983 F.2d at 304 & n. 8. While the former statute criminalizes only the execution, or attempted execution, of a scheme to defraud a bank, *see* 18 U.S.C. § 1344 (rendering it unlawful for a person to "knowingly execute[ ], or attempt[ ] to execute, a scheme or artifice ... to defraud a financial institution"), the latter statutes criminalize specifically enumerated actions, *e.g.,* interstate wire transmissions, *see* 18 U.S.C. § 1343, so long as any such action is for the purpose of executing a scheme to defraud. This salient difference routs appellant's reliance on *Lilly.*[5]

Once *Lilly* is placed into proper perspective, appellant's multiplicity claim is easily dismantled. "It is well established that each use of the wires constitutes a separate crime under 18 U.S.C. § 1343, even if the several uses are in pursuance of but one criminal enterprise." *United States v. Fermin Castillo,* 829 F.2d 1194, 1199 (1st Cir.1987). Because each of the fifty-seven counts laid against appellant reflects a distinct wire

transfer of funds, each count describes a separate violation of 18 U.S.C. § 1343—even if the transfers collectively comprised a single execution of a single scheme. *See id.; United States v. Benmuhar,* 658 F.2d 14, 21 (1st Cir.1981), *cert. denied,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982). On this point, *Lilly* does not prop up appellant's argument, but batters it, for *Lilly* expressly reaffirms the *Fermin Castillo* principle. *See Lilly,* 983 F.2d at 303 n. 7 ("Courts have routinely construed the mail and wire fraud statutes to criminalize each mailing or use of the wires.").

For these reasons, we conclude that *Lilly,* properly read, is more bludgeon than crutch so far as appellant is concerned. It follows that appellant's multiplicity claim is meritless. The counts of conviction need not be merged.[6]

### III

### *Construing the Special Assessment Statute*

The second question we must confront is whether 18 U.S.C. § 3013, quoted *supra* note 2, required the district court to impose the monetary equivalent of fifty-seven special assessments in this case. We think that it did.

We begin with bedrock. When "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to its legislative history if the statutory language is unclear." *Blum v. Stenson,* 465 U.S. 886,

---

**5.** Of course, beyond the all-important difference between section 1344's focus on *execution* of a scheme as opposed to section 1343's focus on the individual (covered) acts undertaken in executing the scheme, there are also factual distinctions between *Lilly* and this case. Although appellant, like Lilly, devised one scheme to defraud one victim, he procured multiple sums of money through multiple wire transfers. Lilly, however, engaged in one transaction with one bank, procuring one large sum of money in one loan—a set of facts critical to the analysis of the twenty-nine counts at issue there. *See Lilly,* 983 F.2d at 304. We take no view on the purely hypothetical question of how appellant's case might fare if he, like Lilly, had victimized a financial institution and had been charged with bank fraud rather than wire fraud.

**6.** Appellant suggests that the rule of lenity pertains in this case because 18 U.S.C. § 1343 does not specifically require that a defendant be punished for each act in furtherance of a scheme to defraud. But a criminal statute must be ambiguous before the rule of lenity becomes relevant. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). As the wire fraud statute is unambiguous, and the principle that each use of the wires constitutes a separate violation of section 1343 has been widely accepted for many years, *see, e.g., United States v. Calvert,* 523 F.2d 895, 903 n. 6 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Henderson v. United States,* 425 F.2d 134, 138 n. 4 (5th Cir.1970), we have no occasion to engage the rule of lenity.

896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The statute at issue here provides that a district court "shall" impose the special assessment "on any person convicted of *an offense.*" 18 U.S.C. § 3013(a) (emphasis supplied); *see also id.* at § 3013(a)(2) (providing for the assessment "in the case of *a felony* ") (emphasis supplied). This language admits of only one plausible construction: that a $50 special assessment must be imposed on a defendant who stands convicted of a federal offense that is a felony. And because the statute is phrased in the singular, its terms imply that each offense—each felony—calls for a separate special assessment, even when a single defendant is simultaneously convicted of multiple charges.

The legislative history suggests the same interpretation. The statute was enacted as part of the 1984 Comprehensive Crime Control Act. The Senate Report which accompanied section 3013 states that "[t]he purpose of imposing nominal assessment fees is to generate needed income" to stock a victims' assistance fund, simultaneously created. S.Rep. No. 497, 98th Cong., 2d Sess. 13, *reprinted in* 1984 U.S.C.C.A.N. 3607, 3619. Because the aim of section 3013 is to generate revenue, and because construing it according to the tenor of its text will maximize that goal, we are hard pressed to see how the statute can bear a contrary reading.

We are not pioneers in reaching the conclusion that, under 18 U.S.C. § 3013, a defendant convicted of multiple felonies is subject to multiple assessments. Every court of appeals thus far to consider the question has ruled that the special assessment required by section 3013 must be imposed on a "per count" basis. *See United States v. McGuire,* 909 F.2d 440, 441–42 (11th Cir.1990); *United States v. Smith,* 857 F.2d 682, 686 (10th Cir.1988); *United States v. Dobbins,* 807 F.2d 130, 132 (8th Cir.1986) (per curiam); *United States v. Donaldson,* 797 F.2d 125, 126–29 (3d Cir.1986); *United States v. Pa-*

*gan,* 785 F.2d 378, 381 (2d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). We agree that this is the correct approach. We hold, therefore, that the court below did not err in imposing an aggregate special assessment of $2,850, corresponding to the number of counts of conviction. We need go no further.[7]

*Affirmed.* *See* 1st Cir.Loc.R. 27.1.

---

7. Appellant's claim that his self-professed indigency affects the validity of the special assessment is not properly before us and we express no opinion on it. Absent an indication "that the government has attempted or will attempt to collect the special assessment while [the defendant] lacks the ability to pay," *United States v.*

*Rivera–Velez,* 839 F.2d 8, 8 (1st Cir.1988) (per curiam)—and there is no such indication in this record—appellant's challenge is prematurely posed. *See id.; accord Pagan,* 785 F.2d at 381; *cf. United States v. Levy,* 897 F.2d 596, 598 (1st Cir.1990) (holding to like effect with respect to a stand-committed fine).