**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2048
_____

UNITED STATES OF AMERICA

v.

JAMES JOHNMAN, JR.,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00245-001)
District Judge: Honorable Wendy Beetlestone
_____

Argued September 17, 2019

Before: KRAUSE, MATEY, and RENDELL, *Circuit Judges*.

(Filed: January 28, 2020)


Alison Brill (Argued)
Office of the Federal Public Defender
22 South Clinton Avenue

Station Plaza #4, 4th Floor
Trenton, New Jersey 08609
    *Counsel for Appellant*

William M. McSwain
Priya Desouza
Nancy Rue
Robert A. Zauzmer (Argued)
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106
    *Counsel for Appellee*

_____

OPINION
_____

MATEY, *Circuit Judge*.

The Justice for Victims of Trafficking Act (JVTA), 18 U.S.C. § 3014, requires a special monetary assessment from all persons "convicted of an offense" under certain federal laws. James Johnman, Jr. was convicted under three of those laws and ordered to pay $5,000 for each conviction, $15,000 in total. That, in Johnman's view, is too high. He argues the JVTA should be read to impose only one assessment per case, not one assessment per count of qualifying conviction. Using standard tools of statutory interpretation, we conclude the JVTA's assessment applies to each conviction. So we will affirm the sentence set by the District Court.

# I. BACKGROUND

Johnman signed a plea agreement with the United States admitting to three offenses involving the exploitation of children: use of an interstate facility to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count One); distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Two); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) (Count Three). And the plea agreement provides a helpful roadmap to frame the issue in this appeal. First, each count—and the corresponding maximum penalty—appears in an individual subparagraph of the agreement. There, together with the term of imprisonment, supervised release, and other monetary penalties faced, each subparagraph reads, "and a $5,000 special victims assessment under 18 U.S.C. § 3014." (App. at 15–16.) Second, for clarity, a separate subparagraph aggregates all the maximum and mandatory minimum penalties in the three counts, including "an additional $15,000 special victims assessment under 18 U.S.C. § 3014." (App. at 16.) Third, yet another provision of the agreement stipulates that "[Johnman] agrees to pay the special victims and court assessments in the amount of $15,300 before the time of sentencing or at a time directed by this Court."[1] (App. at 17.) And for good measure, the District Court explained the $15,000 assessment at Johnman's plea hearing. Johnman offered no objections to any of these terms.

Finding the agreement satisfactory, the District Court sentenced Johnman to 368 months of incarceration, a lifetime of supervised release, $1,000 restitution, and $15,300 in

---

[1] The additional $300 stems from separate, $100-per-count assessments imposed under 18 U.S.C. § 3013.

3

special assessments. After the entry of judgment, Johnman filed a notice of appeal. The plea agreement states Johnman waives his right to appeal or collaterally attack his convictions or sentence. (App. at 20.) But it does permit an appeal if "the defendant's sentence on any count of conviction exceeds the statutory maximum for that count." (App. at 21.)

The United States moved to enforce the appellate waiver and for summary affirmance. A motions panel of this Court directed Johnman to address "whether the District Court's imposition of a $15,000 special assessment under the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014, was erroneous." (Order Dated Jan. 30, 2019.) We now answer that question, concluding it was not.

## II. JURISDICTION AND THE STANDARD OF REVIEW

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. The waiver in Johnman's plea agreement does not preclude our review because it allows him to challenge a sentence that exceeds the statutory maximum created by Congress. And in any event, the parties cannot bargain for an illegal sentence. *See Baker v. Barbo*, 177 F.3d 149, 155 (3d Cir. 1999).

Since Johnman failed to object to his sentence before the District Court, we review only for plain error. *See* Fed. R. Crim. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466–67 (1997). This means "we must decide whether (1) an error occurred, (2) the error is 'plain,' and (3) it 'affect[s] substantial rights.'" *United States v. Payano*, 930 F.3d 186, 192 (3d Cir. 2019) (alteration in original) (quoting *United States v. Olano*,

4

507 U.S. 725, 732 (1993)). We need only consider the first prong, as no error occurred.

### III. THE JUSTICE FOR VICTIMS OF TRAFFICKING ACT REQUIRES A $5,000 ASSESSMENT FOR EACH CONVICTION

Congress has repeatedly passed legislation channeling proceeds collected from child sexual abusers to programs supporting victims. Most notably, in 1984, Congress created a mandatory special monetary assessment to fund the Crime Victims Fund. Victims of Crime Act of 1984, Pub. L. No. 98-473, § 1402, 98 Stat. 2170, 2170–71 (codified as amended at 34 U.S.C. § 20101). Under that Act, "[t]he court shall assess on any person convicted of an offense against the United States" an amount tied to the severity of the offense. *Id.* § 1405, 98 Stat. at 2174–75 (codified as amended at 18 U.S.C. § 3013). The monies deposited into the Fund flow to eligible crime victim grant programs and antiterrorism efforts. 34 U.S.C. § 20101. Not surprisingly, questions about the meaning of the phrase "convicted of an offense" in § 3013 arose long ago. And some three decades back, we held that § 3013 requires one assessment per count of conviction. *See United States v. Donaldson*, 797 F.2d 125, 128 (3d Cir. 1986). In quick succession, the Supreme Court and several circuits reached the same conclusion, and the meaning of § 3013 was soon settled.[2]

---

[2] *See Rutledge v. United States*, 517 U.S. 292, 301 (1996) (noting that § 3013 requires a special assessment for every count of conviction); *United States v. Luongo*, 11 F.3d 7, 10 (1st Cir. 1993) (holding that each felony requires a separate special assessment); *United States v. Oanh Vu Nguyen*, 916 F.2d 1016, 1020 (5th Cir. 1990) (holding that the district court

5

In 2015, Congress established the Domestic Trafficking Victims' Fund and, to provide financial support, created another special monetary assessment applicable to certain crimes involving human trafficking and child exploitation. Pub. L. No. 114-22, § 101, 129 Stat. 227, 228–30 (codified as amended at 18 U.S.C. § 3014). Those monies are then used to fund eligible trafficking victim and child abuse assistance programs. 18 U.S.C. § 3014. And relevant here, Congress used nearly identical language in § 3014 as it had in enacting § 3013.

## A. The Language of § 3014

With that grounding, "[a]s in any statutory construction case, '[w]e start, of course, with the statutory text.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (second alteration in original) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)). The text of § 3014(a) reads:

> In general.—Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2021, in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under—

needed to impose an assessment for each conviction); *United States v. McGuire*, 909 F.2d 440, 441–42 (11th Cir. 1990) (per curiam) (concluding that the special assessment applies per count of conviction); *United States v. Smith*, 857 F.2d 682, 686 (10th Cir. 1988); *United States v. Dobbins*, 807 F.2d 130, 132 (8th Cir. 1986); *United States v. Pagan*, 785 F.2d 378, 381 (2d Cir. 1986).

(1) chapter 77 (relating to peonage, slavery, and trafficking in persons);

(2) chapter 109A (relating to sexual abuse);

(3) chapter 110 (relating to sexual exploitation and other abuse of children);

(4) chapter 117 (relating to transportation for illegal sexual activity and related crimes); or

(5) section 274 of the Immigration and Nationality Act (8 U.S.C. 1324) (relating to human smuggling), unless the person induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

"As usual, our job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (alteration in original) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Broken down for ease, subsection (a) requires that courts (1) assess (2) an amount of $5,000 (3) on any non-exempt person or entity (4) convicted of an offense (5) under certain enumerated chapters of the criminal code. Thus, how many assessments a court must impose turns on the meaning of the phrase "convicted of an offense" in the subsection. We examine the ordinary meaning of those words individually and in context.

First, an "offense" is "a crime," a "violation of the law." *Offense*, Black's Law Dictionary (10th ed. 2014); *accord Offense*, New Oxford American Dictionary (3d ed. 2010) ("a breach of a law or rule; an illegal act"). Giving this word its ordinary meaning, "offense" is best read to refer to a discrete criminal act. "Convicted," in turn, is the past participle of "convict," which means "to find or declare guilty *of an offense or crime*[.]" *Convict*, Webster's Third New International Dictionary (3d ed. 1993) (emphasis added); *accord Convict*, Black's Law Dictionary (10th ed. 2014) ("to find (a person) guilty of a criminal offense"). So "convicted" as normally understood is an offense-specific term. Combining these terms, a defendant like Johnman who pleads guilty to three counts has been "convicted" of three separate "offense[s]"—or, put another way, has three times been "convicted of an offense." And for every conviction, the sentencing court "shall assess an amount of $5,000." 18 U.S.C. § 3014(a).

Second, the statute uses the singular construction— "convicted of *an offense*." *Id.* (emphasis added). As the First Circuit has noted, Congress's use of the singular "an offense" is best read to mean that "each offense" requires a separate assessment, no matter how many convictions. *See Luongo*, 11 F.3d at 10. The most natural reading of the phrase "convicted of an offense" means an assessment imposed on each qualifying conviction.

Third, the balance of the statute confirms the ordinary reading of subsection (a). Other references to the assessment in the rest of § 3014 take three forms: (1) "[a]n assessment under subsection (a)";[3] (2) "[t]he amount assessed under subsection

---

[3] *See* 18 U.S.C. § 3014(b).

8

(a)";[4] and (3) "the obligation to pay an assessment imposed on or after the date of enactment[.]"[5] All three add even more clarity to the best reading of subsection (a).

Start with subsection (b):

> (b) Satisfaction of other court-ordered obligations.—*An assessment* under subsection (a) shall not be payable until the person subject to *the assessment* has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which *the* special assessment is based.

18 U.S.C. § 3014(b) (emphasis added).

Congress's use of indefinite and definite articles when referencing the special assessment is telling. That is because "'[w]ords are to be given the meaning that proper grammar and usage would assign them.'" *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (first alteration in original) (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 140 (2012)). In writing "an assessment under subsection (a)" Congress chose the indefinite article "an" to modify "assessment." As an indefinite article, "a" or "an" "implies that the thing referred to is nonspecific." *Indefinite Article*, New Oxford American Dictionary (3d ed. 2010); *see also McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015) (analyzing the significance of Congress's use of an indefinite

---

[4] *See id.* § 3014(f).
[5] *See id.* § 3014(g).

article to mean some undetermined or unspecified particular); *cf. Shamokin Filler Co. v. Fed. Mine Safety & Health Review Comm'n*, 772 F.3d 330, 336 (3d Cir. 2014) (finding that Congress's choice of a definite article—rather than an indefinite article—regulated activity at a particular place). And so too here, Congress left the aggregate amount assessed under subsection (a) dependent on the amount of qualifying convictions.[6]

Then, after first establishing "assessment" to mean an indefinite or unrestrictive amount, Congress rightly pivots when returning to "assessment" later in the same subsection. Here, the statute twice uses the definite article "the" to modify

---

[6] We recognize that one could interpret subsection (b)'s use of the indeterminate "an" in more than one way. But the structure of the statute clarifies that "an" refers to the indeterminate total amount of the assessment. Subsection (a) imposes an assessment if two conditions exist: (1) the person is non-indigent; and (2) the person or entity is convicted of an enumerated offense. Subsection (b) then assigns a lower priority to that assessment, explaining that it will not be payable until other specified debts are satisfied. So read together, the qualifications of subsection (b) only come into play if an assessment is ordered. And since an assessment cannot be issued against the indigent or for a non-enumerated conviction, the conditions of (b) simply do not arise in a matter involving those exempted or inapplicable classes. In short, the reader has no occasion to consider the conditions of subsection (b) if the conditions of subsection (a) are not satisfied. All of which illustrates that even if a word can bear more than one meaning, it is the best ordinary reading of a statute we seek. *See Wis. Cent.*, 138 S. Ct. at 2072.

10

"assessment" and thus looks back to the initial reference to assessment in the subsection. And so, read naturally, "the assessment" or "the special assessment" in subsection (b) means the total amount of "an assessment under subsection (a)." Congress repeats this arrangement in subsection (g): "the obligation to pay *an assessment* imposed on or after the date of enactment of the Justice for Victims of Trafficking Act of 2015 shall not cease until *the assessment* is paid in full." 18 U.S.C. § 3014(g) (emphasis added).

So too with the formulation in subsection (f), "[t]he amount assessed under subsection (a)," where Congress does not quantify "the amount." Subsection (f) employs the indeterminate phrase "the amount" to signify an unrestricted sum. When used in this context, "amount" means "a quantity of something, typically *the total* of a thing or things in number, size, value, or extent[.]" *Amount*, New Oxford American Dictionary (3d ed. 2010) (emphasis added). Congress's choice therefore leaves "the amount assessed" open to more than one monetary value. 18 U.S.C. § 3014(f).

In all, the words of § 3014 confirm the District Court was correct to impose a $15,000 special assessment under the JVTA.

**B. The Special Assessment in § 3014 Mirrors the Neighboring Special Assessment in § 3013**

This reading of § 3014 agrees with our long-standing interpretation of the assessment codified at 18 U.S.C. § 3013. Recall that § 3014 instructs that the special assessment applies "in addition to the assessment imposed under section 3013." 18 U.S.C. § 3014(a). And well before Congress wrote § 3014, the meaning of the phrase "convicted of an offense" in § 3013

11

was settled in the federal courts. That history is significant, for when Congress uses a phrase that has a settled judicial interpretation, we presume it adopts that interpretation when it chooses to repeat the same text in a new statute. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018); *see also Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018). Under this prior-construction canon, "if courts have settled the meaning of an existing provision, the enactment of a new provision that mirrors the existing statutory text indicates, as a general matter, that the new provision has that same meaning." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 563 (2017) (citing *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)). By borrowing nearly identical language when drafting § 3014, Congress gave its implicit endorsement of courts' treatment of § 3013, as the "repetition of the same language in a new statute indicates . . . the intent to incorporate its . . . judicial interpretations as well." *Berardelli*, 900 F.3d at 117 (alterations in original) (quoting *Bragdon*, 524 U.S. at 645).

And more than history and location link § 3013 and § 3014. Section 3014's cross-reference to § 3013 further counsels courts to interpret the two statutes in lockstep, as it would be incongruous to conclude Congress intended courts to read the same phrase differently when applying assessments to the same defendant in the same case. We can also dismiss the possibility that Congress sought to alter the settled interpretation of § 3013's phrase "convicted of an offense" when it enacted § 3014. To the contrary, "'[t]he modification by implication of the settled construction of an earlier and different section [or a related statute] is not favored.'" *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 (2017) (quoting *United States v. Madigan*, 300

12

U.S. 500, 506 (1937)). Thus, absent "clear indication" of Congress's plan to change the meaning of a judicially settled construction, that construction should not be disturbed. *Id.* As a result, "[t]he broader statutory context points to the same conclusion the immediate text suggests." *Wis. Cent.*, 138 S. Ct. at 2071.

And the logic used by courts to interpret § 3013 extends to § 3014 as well. *See Luongo*, 11 F.3d at 10 (explaining that "because the statute is phrased in the singular, its terms imply that each offense—each felony—calls for a separate special assessment, even when a single defendant is simultaneously convicted of multiple charges"). Just as with § 3013, it is illogical to read § 3014's application to depend "not upon the number of offenses of which [the defendant] was convicted," but on the happenstance of "whether she was tried for those offenses in one or more proceedings." *Donaldson*, 797 F.2d at 128 (citing *Pagan*, 785 F.2d at 381).[7]

---

[7] In trying to distinguish § 3014 from § 3013, Johnman highlights several ways in which § 3014 "is more onerous" (Appellant's Br. at 16), including that the amount of the assessment is much higher, *compare* 18 U.S.C. § 3014(a), *with id.* § 3013(a), that the obligation to pay it lasts longer, *compare id.* § 3014(g), *with id.* § 3013(c), and that § 3014(a) contains an indigency exception while § 3013(a) does not. All true, but our role is not to "second-guess Congress' decision." *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019). There is no freestanding rule of statutory interpretation that a court may rewrite statutes to be less "onerous" to criminal defendants. Indeed, that Congress created an indigency exception in § 3014(a) shows it grasped the severity of the assessment.

13

For these reasons, the text of § 3013 and its context leave only one interpretation: where a defendant is non-indigent, a separate $5,000 assessment applies to every qualifying count of conviction.[8]

## C. Lenity is Inapplicable

Finally, Johnman argues the "rule of lenity" requires resolving any statutory ambiguities in his favor. "[T]he touchstone of the rule of lenity is statutory ambiguity." *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (internal quotation

---

[8] Johnman looks to overcome the language of § 3014 with comments from members of Congress. For instance, Johnman cites remarks by one of the JVTA's legislative sponsors—made two years after the law's enactment—explaining that the JVTA "also allows a federal judge to impose an additional assessment of up to $5,000." (Opening Br. at 9 (quoting 163 Cong. Rec. H4564 (daily ed. May 24, 2017)).) Generally, "[p]ost-enactment legislative history is not a reliable source for guidance" in assessing the ordinary meaning of a statute. *Pa. Med. Soc'y v. Snider*, 29 F.3d 886, 898 (3d Cir. 1993); *see also Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 698–99 (3d Cir. 2016). And in any event, those remarks fight the text of the statute: the JVTA is not permissive and does not "allow" judges to impose an assessment "up to" $5,000. Rather, the assessment is mandatory. *See* 18 U.S.C. § 3014(a) ("the court *shall* assess an amount of $5,000" (emphasis added)). So these comments lend Johnman no support, for we "must presume that Congress 'says in a statute what it means and means in a statute what it says there.'" *Rotkiske*, 140 S. Ct. at 360 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

14

marks omitted). But invoking the rule "requires more than a difficult interpretative question." *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010). Rather, the rule "comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *United States v. Barbosa*, 271 F.3d 438, 455 (3d Cir. 2001) (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)).[9] And it may be applied only where we are left with "grievous ambiguity" after applying all other traditional tools of statutory interpretation. *United States v. Diaz*, 592 F.3d 467, 474–75 (3d Cir. 2010).

Johnman sees ambiguity not in the text, but in the application of § 3014(a), citing inconsistencies in the assessments imposed by district courts in this Circuit.[10] But that is not enough, for "[a] statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction." *Reno v. Koray*, 515 U.S. 50, 64–65 (1995) (internal quotation marks omitted).

---

[9] We inverted this order in *Donaldson*, considering, and rejecting, the rule of lenity before turning to the "normal canons of statutory construction." 797 F.2d at 127–28. That path has been repudiated by later case law, and neither party suggests we must apply it here.

[10] *Compare United States v. Porter*, No. 2-16-cr-00036 (E.D. Pa.) (imposing a $5,000 JVTA assessment based on two qualifying convictions), *with United States v. Leroy*, No. 2-16-cr-00243 (W.D. Pa.) (imposing a $20,000 JVTA assessment based on four qualifying convictions), *and United States v. Johnman*, No. 2-17-cr-00245 (E.D. Pa.) (imposing a $15,000 JVTA assessment based on three qualifying convictions).

Because we find the statute clear, the rule of lenity does not affect our review.[11]

The $5,000 assessment under the Justice for Victims of Trafficking Act applies to each qualifying count of conviction. We will thus affirm the sentence imposed by the District Court.

---

[11] Even assuming we found the assessment under the JVTA ambiguous, for the rule of lenity to apply we would need to assess whether the statute imposes a criminal rather than civil sanction—an issue we do not reach today.