**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1367
_____


ESSINTIAL ENTERPRISE SOLUTIONS, LLC

v.

THE UNITED STATES SMALL BUSINESS
ADMINISTRATION;
ADMINISTRATOR UNITED STATES SMALL BUSINESS
ADMINISTRATION;
SECRETARY UNITED STATES DEPARTMENT
OF TREASURY;
THE UNITED STATES OF AMERICA,
                                    Appellants.
_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1:22-cv-01507)
District Judge:  Honorable Julia K. Munley
_____


Argued:  December 3, 2025

Before: CHAGARES, *Chief Judge*, FREEMAN and BOVE,
*Circuit Judges*.

(Filed: February 3, 2026)

_____

Adam C. Jed                    **[ARGUED]**
United States Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530

Patrick J. Bannon
Michael J. Butler
Office of United States Attorney
Middle District of Pennsylvania
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, Pennsylvania 18503
          *Counsel for Appellants*

Bret S. Wacker                 **[ARGUED]**
J. Chris White
Clark Hill
1400 Wewatta Street
Suite 550
Denver, Colorado 80202

Danny P. Cerrone, Jr.
Clark Hill
301 Grant Street
Fourteenth Floor
Pittsburgh, Pennsylvania 15219

Cynthia Filipovich
Clark Hill
500 Woodward Avenue
Suite 3500
Detroit, Michigan 48226
          *Counsel for Appellee*

---

OPINION OF THE COURT

---

BOVE, *Circuit Judge*.

The Small Business Administration (SBA) appeals a finding that the agency violated the Administrative Procedure Act by declining to fully forgive a Paycheck Protection Program loan. The appeal turns on whether the borrower's payments to independent contractors were "payroll costs" under the Program's statutory definition of that term. The interpretive question is not a routine ground ball. The District Court said yes, ruling that payments to independent contractors were covered. As did another district judge in the Western District of Louisiana. A district judge in the Eastern District of Michigan sided with the SBA and said no. So too did two Circuits. The Third will be the third. So we will reverse.

**I.**

This case arose out of a $7 million loan issued to Essintial Enterprise Solutions, LLC through the Paycheck Protection Program (PPP). Essintial provides staffing and other services to customers in several industries. We get into the details below, but the gist is that Essintial sued the SBA when the SBA refused to forgive the entire loan. The District Court resolved the parties' dueling interpretations of the relevant statutory definition in Essintial's favor. This appeal followed.

**A.**

Following the President's March 13, 2020 emergency declaration relating to the COVID-19 pandemic, Congress

established the PPP in the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act included the PPP, which "aimed to help small businesses keep workers employed during the crisis, by providing forgivable, low-interest, federally guaranteed loans to keep employees on the payroll." *Seville Indus., L.L.C. v. SBA*, 144 F.4th 740, 742 (5th Cir. 2025).[1] Eligible applicants could borrow up to $10 million from a private lender, guaranteed by the SBA, based on a formula relating to "payroll costs." *See* 15 U.S.C. § 636(a)(36)(E); *see also id.* § 636(a)(36)(A)(viii) (defining "payroll costs"). Borrowers were eligible for loan forgiveness to the extent loan proceeds were used for specified expenses, including "payroll costs." *Id.* § 636m(b)(1).

The President signed the CARES Act into law on March 27, 2020. The SBA was required to issue implementing regulations within a mere 15 days. *See* 15 U.S.C. § 9012. On April 2, 2020, the SBA published an Interim Final Rule on its website, not effective until April 15, which differentiated between types of "payroll costs" for a traditional business with "employees" and "for an independent contractor or sole proprietor." 85 Fed. Reg. at 20813. The Rule confirmed that independent contractors did not "count as employees" because contractors "have the ability to apply for a PPP loan on their own . . . ." *Id.*

On the same day that the SBA issued the Interim Final Rule, the lending bank advised Essintial's principal that "1099 employees are allowed to be included in payroll costs" for

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

purposes of a PPP loan.  A 45.  On April 4, 2020, Essintial applied for a PPP loan in the amount of $7,219,862.  Essintial reported that it had 359 "employees" and calculated the loan amount based on an "Average Monthly Payroll" of $2,887,945.  Like the Interim Final Rule, the instructions on the application form differentiated between payroll costs for a traditional business and "for an independent contractor or sole proprietor."  A 64.

On April 20, 2020, the bank loaned Essintial $7,028,800, on a two-year term at 1% interest.  When Essintial sought forgiveness of the loan in January 2021, the company indicated that it had only 276 "employees" at the time of the loan application.  In the forgiveness application, Essintial acknowledged that the SBA "may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness."  A 75.  The bank agreed to forgive the entire loan, but the SBA opened a review of that determination later in January 2021.

In June 2021, the SBA notified Essintial that "[t]he loan documentation does not fully support the disbursed loan amount" because "ineligible payroll expenses were included in the calculation of the loan amount: 1099 Contractor costs."  A 81.  After some number crunching, the SBA forgave $3,703,011.60 of the loan.  The SBA's Office of Hearings and Appeals affirmed the SBA's determination in May 2022.

**B.**

In September 2022, Essintial sued the SBA and related government actors in an effort to recover the unforgiven aspects of the PPP loan.  Essintial contended that the SBA's forgiveness decision violated the Administrative Procedure

5

Act and argued that the SBA had relied on an improper retroactive application of the Interim Final Rule.

The District Court granted summary judgment to Essintial and held that the SBA's decision was arbitrary and capricious. *See Essintial Enter. Sols., LLC v. SBA*, 2024 WL 5248242 (M.D. Pa. 2024). The court ruled that the SBA did not retroactively apply the Interim Final Rule, but that the SBA erred by interpreting the definition of "payroll costs" in the CARES Act to exclude Essintial's payments to independent contractors. *See id.* at *4-9. The SBA timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

The Administrative Procedure Act directs courts to set aside final agency actions that are arbitrary, capricious, or contrary to law. *See* 5 U.S.C. § 706(2)(A). We conduct *de novo* review of statutory interpretations in support of § 706(2) analysis and legal conclusions in summary judgment decisions. *See Axalta Coating Sys. LLC v. FAA*, 144 F.4th 467, 472 (3d Cir. 2025); *see also Jorjani v. N.J. Inst. of Tech.*, 151 F.4th 135, 140 n.5 (3d Cir. 2025).

## III.

We hold that the SBA's interpretation of "payroll costs" under the CARES Act did not violate the Administrative Procedure Act.

Reasonable minds could differ on this one, and some already have. *Compare Veltor Underground, LLC v. SBA*, 143 F.4th 727 (6th Cir. 2025), *and Seville Indus.*, 144 F.4th at 742, *with Essintial*, 2024 WL 5248242, *and Seville Indus. LLC v.*

6

*SBA*, 2024 WL 697592 (W.D. La. 2024). But in our view, the CARES Act included two alternative definitions of "payroll costs." 15 U.S.C. § 636(a)(36)(A)(viii)(I). The term "means" one of two things depending on the type of borrower. *Id.* The two options are set forth in subsections (aa) and (bb) of the definition. Subsection (aa) defines payroll costs for a traditional business that has "employees." Subsection (bb) defines payroll costs for "a sole proprietor or independent contractor," and it does not cover Essintial's payments to such a contractor. While this interpretation of § 636(a)(36)(A)(viii)(I) is not the only option, it is the single, best meaning based on the statutory text and structure.

**A.**

"[S]tatutes, no matter how impenetrable, do—in fact, must—have a single, best meaning." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). "The words on the page, not the intent of any legislator, go through bicameralism and presentment and become law." *United States v. Safehouse*, 985 F.3d 225, 239 (3d Cir. 2021). Statutes resulting from this process "*are* the law." *Travers v. Fed. Express Corp.*, 8 F.4th 198, 202 n.9 (3d Cir. 2021). Thus, "every statute's *meaning* is fixed at the time of enactment . . . ." *Wis. Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018).

Experience teaches that a statute's fixed meaning is not obvious in every instance. For example, questions can pop up about the meaning of statutory text when "new *applications* . . . arise in light of changes in the world." *Wis. Cent.*, 585 U.S. at 284. When that happens, "even if a word can bear more than one meaning, it is the best ordinary reading of a statute we seek." *United States v. Johnman*, 948 F.3d 612, 618 n.6 (3d Cir. 2020). That is, we look to the "ordinary, contemporary, common" public meaning of the

7

words at issue at the time the law was passed. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *see also Lopez v. AG*, 49 F.4th 231, 234 n.4 (3d Cir. 2022). Identifying a disputed term's single, best meaning in the context of a justiciable controversy is one of our main jobs.

The District Court deviated from that task in modest but noteworthy ways that contributed to an erroneous conclusion. Despite acknowledging that *Loper Bright* overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the District Court fixated at times on "whether or not [the] statute is ambiguous," including based on "case law interpreting the first step of *Chevron*." *Essintial*, 2024 WL 5248242, at *5 n.7. *Loper Bright* laid to rest the "Snark hunt" for ambiguity. 603 U.S. at 437 (Gorsuch, J., concurring); *see also id.* at 407-08 (explaining that the "defining feature" of *Chevron* was "the identification of statutory ambiguity . . . [b]ut the concept of ambiguity has always evaded meaningful definition").

The District Court also operated under the related misimpression that, in the absence of a specified ambiguity in the statutory definition, the court "need not refer" to "various statutory sections" cited by the SBA outside of the statutory definition. *Essintial*, 2024 WL 5248242, at *9. The scope and application of "payroll costs" was plainly subject to a reasonable dispute between the parties here. And "interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). Consequently, it was error to confine the SBA's arguments about other relevant features of the CARES Act to a footnote without analysis. *See Essintial*, 2024 WL 5248242, at *9 n.9. In fact, those

8

arguments are among the contentions that convince us that the SBA is correct about the definition of "payroll costs."

**B.**

Turning to that definition, Congress used two subsections to create alternative meanings of "payroll costs." 15 U.S.C. § 636(a)(36)(A)(viii)(I). Subsection (aa) addresses types of compensation provided by a business like Essintial to "employees," and subsection (bb) addresses compensation provided by—not paid to—a "sole proprietor or independent contractor." *Id.* The best reading of the definition is that neither subsection covers Essintial's payments to independent contractors.

For ease of reference, the definition looks like this:

(viii) the term "payroll costs"—

(I) means—

(aa) the sum of payments of any compensation with respect to employees that is a—

(AA) salary, wage, commission, or similar compensation;

(BB) payment of cash tip or equivalent;

(CC) payment for vacation, parental, family, medical, or sick leave;

(DD) allowance for dismissal or separation;

(EE) payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums;

(FF) payment of any retirement benefit; or

(GG) payment of State or local tax assessed on the compensation of employees; and

(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred

*Id.*

Section 636(a)(36)(A)(viii)(I) tells us what "payroll costs" "means." Words preceding the em-dash that follows "means" distribute to subsections (aa) "and" (bb). *See Seville Indus.*, 144 F.4th at 746 (citing *United States v. Palomares*, 52 F.4th 640, 650 (5th Cir. 2022) (Oldham, J., concurring)); *see also United States v. Pace*, 48 F.4th 741, 754 (7th Cir. 2022); *Johnman*, 948 F.3d at 618 ("[W]ords are to be given the meaning that proper grammar and usage would assign them."). Payroll costs "means" one thing for a business with "employees." 15 U.S.C. § 636(a)(36)(A)(viii)(I)(aa). And another thing for "a sole proprietor or independent contractor." *Id.* § 636(a)(36)(A)(viii)(I)(bb). The phrase "the sum of

10

payments" introduces each subsection and required the borrower to add up the different types of compensation covered by the applicable subsection. *Id.* § 636(a)(36)(A)(viii)(I)(aa), (bb). Congress could have called for the addition of payments arguably covered by both subsections by, for example, inserting "the sum of" between "means" and the em-dash. *See Seville Indus.*, 144 F.4th at 749. But Congress did not do that. Thus, "[t]he payment universes do not overlap." *Veltor Underground*, 143 F.4th at 733.

Close examination of subsection (bb) further demonstrates that this part of the "payroll costs" definition cannot be invoked by Essintial. The payroll costs that Congress specified in subsection (bb)—"a wage, commission, income, net earnings from self-employment"—are types of compensation that "sole proprietors and independent contractors obtain from (or reinvest into) their businesses." *Veltor Underground*, 143 F.4th at 731; *see also Seville Indus.*, 144 F.4th at 746 ("Subsection (bb) therefore defines payroll costs as the money *earned by* independent contractors or sole proprietors, not as the money *paid to* them by businesses."). This is "clear enough" with respect to "income" and "net earnings from self-employment." *Veltor Underground*, 143 F.4th at 732. "Only what one gets can be described as 'income' or 'net earnings from self-employment,' not what one gives." *Id.*

Things are admittedly murkier with respect to the "wage" and "commission" examples, which also appear in subsection (aa). We make sense of the overlap by reference to neighboring terms. *See Veltor Underground*, 143 F.4th at 734-35. When situated next to "income" and "net earnings from self-employment," as in subsection (bb), we interpret the words "wage" and "commission" to refer to additional types of

11

payments made by "a sole proprietor or independent contractor." *See id.* at 733 ("A business no more pays its contractors a wage or a commission when it purchases services than a business's customers pay the business's employees a salary when they purchase goods.").

In subsection (aa) on the other hand, "wage" and "commission" have a different neighbor, "salary," which is not included in subsection (bb). "The difference must have significance." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 283 (3d Cir. 2018). Businesses pay salaries to employees. The same is true of the other examples in the remainder of the list that accompanies subsection (aa), such as tips, paid leave, severance, and insurance and retirement benefits. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(I)(aa)(BB)-(GG). These are additional types of employee compensation. The salient point here is that subsections (aa) and (bb) are best read as having a parallel structure with alternative definitions based on outlays of "payments and compensation" by the type of borrower at issue. Subsection (bb) "adopt[s] the perspective of a sole proprietor or independent contractor and ask[s] how much he pays himself." *Veltor Underground*, 143 F.4th at 733. It does not cover Essintial's payments to independent contractors.

There is more support for this interpretation in the express exclusions from the "payroll costs" definition. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II). As relevant here, "any compensation of an employee whose principal place of residence is outside of the United States" cannot be included in a borrower's payroll costs. *Id.* § 636(a)(36)(A)(viii)(II)(cc). This exclusion applies to subsection (aa) by virtue of the reference to an "employee," but there is no corresponding reference to the "sole proprietor or independent contractor"

12

language from subsection (bb). Under our interpretation, "[t]hat makes sense." *Veltor Underground*, 143 F.4th at 733. It would be "freakish" for the CARES Act "to exclude foreign resident employees but include foreign resident independent contractors" for purposes of a traditional business calculating payroll costs. *Seville Indus.*, 144 F.4th at 748.

Zooming out, "[t]he statute as a whole confirms our interpretation." *Star Athletica*, 580 U.S. at 415. The CARES Act established "[i]ncreased eligibility" for loans. 15 U.S.C. § 636(a)(36)(D). In defining the scope of the increase, Congress used different subsections to differentiate between a potential borrower that "employs . . . employees," and "individuals who operate under a sole proprietorship or as an independent contractor." *Compare id.* § 636(a)(36)(D)(i), *with id.* § 636(a)(36)(D)(ii). The distinction and its subsection structure tracks our interpretation of the alternative definitions of "payroll costs" in subsections (aa) and (bb).

There is also a telling clue in the CARES Act provisions relating to loan forgiveness. Congress limited the grace available to borrowers who reduced the "number of employees," or cut those employees' "salary or wages" by more than 25%. *See Seville Indus.*, 144 F.4th at 748 (citing 15 U.S.C. §§ 636m(d)(2), 636m(d)(3)(A)); *Veltor Underground*, 143 F.4th at 734; *see also* 15 U.S.C. § 636(a)(37)(J)(iv) (similar forgiveness provisions relating to second-draw PPP loans). Congress did not want the SBA forgiving loans issued to borrowers who cut employees because employee retention was the stated objective of the PPP. There is "no corresponding limitation for cuts to independent contractors." *Seville Indus.*, 144 F.4th at 748. We draw the same inference as the other Circuits to have reached the question. Because "[s]ubsection (bb) covers only what a sole proprietor or

13

independent contractor pays himself," "Congress had little need to worry that he would get a loan and then diminish his own wages." *Veltor Underground*, 143 F.4th at 734.

Finally, our interpretation of "payroll costs" prevents the absurd scenario where a business and the independent contractor that the business paid both get PPP loans based on the same payments. That happened in this case for some of the payments at issue. The certification required with PPP applications was not enough to prevent this double dipping because Essintial was only required to disclose existing "duplicative" loans obtained by the company, not loans issued to third parties such as Essintial's independent contractors. *See* 15 U.S.C. § 636(a)(36)(G)(i)(IV); *see also Veltor Underground*, 143 F.4th at 737 (explaining that the certification "does not require the recipient to ensure that no one else has applied for funds that might cover the same expenses"). "There is no principled reason to think Congress meant to double count money spent on independent contractors, especially in a statute that is otherwise rigorous about avoiding duplication." *Seville Indus.*, 144 F.4th at 750. We agree with the Fifth and Sixth Circuits that Congress did not embrace duplicative draws on the public fisc in the CARES Act. This is another reason that, on balance, the SBA has it right in this case.

## C.

In the District Court and this appeal, Essintial presented forceful arguments in support of the company's position. We acknowledge the strength of those contentions but decline to adopt Essintial's interpretation of "payroll costs" because it places too much emphasis on a "hyper-literalist reading[] of the word *and*" separating subsections (aa) and (bb). *Palomares*, 52 F.4th at 649 (Oldham, J., concurring).

14

Essintial correctly notes the presumption in our caselaw that "and" is used in the conjunctive. *See Reese Bros. v. United States*, 447 F.3d 229, 235-36 (3d Cir. 2006). This applies to the "and" separating subsections (aa) and (bb). The question remains: "conjunctive of what?" *Veltor Underground*, 143 F.4th at 736. "[T]he fact that the definition includes both (aa) and (bb) does not tell us whether (bb) refers [1] to payments a business makes to sole proprietors and independent contractors or [2] to payments that sole proprietors and independent contractors make to themselves." *Id.* Essintial's push for the first option is based on an "arithmetical" reading of the statute, where "payroll costs" means "*the sum of*" the payments described in subsections (aa) "and" (bb). *Seville Indus.*, 144 F.4th at 748. As noted above, Congress used that phrase to introduce each subsection—both start with "*the sum of* payments of any compensation"—but not the entire definition. 15 U.S.C. § 636(a)(36)(A)(viii)(I) (emphasis added). We lack authority to insert those words where Essintial would prefer them, and the placement chosen by Congress does not help Essintial.

In an effort to put a favorable gloss on the meaning of "and," Essintial draws our attention to several other features of the CARES Act. The company's arguments have merit, but they do not carry the day. Focusing on subsection (bb), Essintial relies on a truncated quotation to argue that "payroll costs" include "compensation to . . . [an] independent contractor . . . ." 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb). While this isolated language could be interpreted to include the payments that the SBA rejected, that is not the best reading of this phrase. Subsection (bb) is confined to specific types of "compensation"; compensation "*that is* a wage, commission, income, net earnings from self-employment," and other "similar payments." *Id.* (emphasis added). Essintial's

15

payments to independent contractors do not fit within the ordinary meaning of the words Congress used to restrict the ordinary meaning of "compensation" in subsection (bb).

In rejecting Essintial's argument, we also find significance in the singular form that Congress assigned to "independent contractor" in subsection (bb). *See Seville Indus.*, 144 F.4th 747; *Veltor Underground*, 143 F.4th at 733. In subsection (aa), the relevant recipients of the compensation in question are "employees," plural. In subsection (bb), however, Congress made a "deliberate" choice to use the singular form of "independent contractor" because the entire definition is written from the standpoint of a single potential borrower with "payroll costs" to be accounted for in the loan and forgiveness applications. *Seville Indus.*, 144 F.4th at 747.

Essintial also points us to the statutory exclusions from "payroll costs," but we have already found one aspect of those exclusions to support the SBA. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II). The company pushes forward citing caselaw applying the *expressio unius* canon. Essintial contends that Congress's failure to explicitly exclude a business's payments to independent contractors means that such payments are impliedly covered by subsection (bb). *Expressio unius*, which is "not absolute," may serve as an interpretive aid where "Congress includes particular language in one section of a statute but omits it in another section of the same Act." *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023). Essintial's argument is too much of a stretch because it is based on two omissions rather than one. The omission of payments to independent contractors from the exclusions is consistent with the fact that Congress omitted words of sufficient clarity in subsection (bb) to cover such payments. There was nothing to exclude. At least nothing Essintial cares about in this appeal.

The better inference, already noted, is that Congress would have excluded payments to foreign contractors, as it did for foreign employees, if subsection (bb) otherwise covered a traditional business's payments to independent contractors. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II)(cc).

Moving beyond the definition, Essintial relies on one of the loan-eligibility provisions of the CARES Act, which required lenders to consider whether a potential borrower had paid "employees" or "independent contractors, as reported on a Form 1099-MISC." 15 U.S.C. § 636(a)(36)(F)(ii)(II)(bb). Essintial contends that borrower eligibility considerations referencing payments to independent contractors would be "meaningless surplusage" if such payments were not also part of the "payroll costs" that are relevant to the calculation of the loan amount and forgiveness. Appellee's Br. 30. This is another argument that has some purchase. *See Veltor Underground*, 143 F.4th at 738-39 (White, J., concurring). Yet ultimately it fails to persuade.

Here, again, the singular-plural distinction undercuts Essintial's position. Similar to the "payroll costs" definition, the eligibility provision is written from the vantage point of payments by a single potential "borrower"—to "employees," which also appears in the definition's subsection (aa), and "independent contractors," which does not appear in subsection (bb). *Id.* § 636(a)(36)(F)(ii)(II). This parallel structure is consistent with our interpretation that subsection (bb) only covers payments received by—not payments made to—a single independent contractor seeking to participate in the PPP.

Essintial's argument is also weakened by the fact that these provisions serve different ends. The eligibility provision "simply does not address how payroll costs are determined."

17

*Veltor Underground*, 143 F.4th at 737. Congress required private lenders to evaluate eligibility considerations when deciding *whether* to issue a PPP loan at all. The threshold question of eligibility had no bearing on *how much* should be loaned or forgiven, which are both a function of an eligible borrower's "payroll costs" and governed by distinct provisions. *Compare* 15 U.S.C. § 636(a)(36)(F)(ii)(II) (eligibility), *with id.* § 636(a)(36)(E) (maximum loan amount), *and id.* § 636m(b) (loan forgiveness).

The eligibility considerations reflect anti-fraud concerns not apparent on the face of the definition of "payroll costs." The eligibility-related text indicates that Congress sought to ensure that PPP loans were not given to new businesses that were established for the sole purpose of taking advantage of the Program and its expanded eligibility. *See, e.g.*, 15 U.S.C. § 636(a)(36)(D) ("Increased eligibility for certain small businesses and organizations"). We infer this purpose from the fact that, for purposes of eligibility, Congress twice referenced payments that could be verified with tax records; "payroll taxes" for employees and "Form 1099-MISC" for independent contractors. *Id.* § 636(a)(36)(F)(ii)(II)(bb). These objective considerations helped "sort the wheat (real businesses, in need of support) from the chaff (fake businesses, established solely to capitalize on the program)." *Veltor Underground*, 143 F.4th at 737. Thus, while one might wonder why Congress would care about a business's payments to independent contractors for purposes of eligibility but not loan amount, the statute as a whole provides enough of an answer that any unresolved aspects of the question do not move the needle to Essintial's side.

18

## D.

We are sympathetic to the challenges that the COVID-19 pandemic created for Essintial and other businesses, but we do not agree with Essintial that the company was the victim of a "bait-and-switch" by the government. Appellee's Br. 17.

As a matter of law, Essintial's argument does not address the statutory text and therefore has limited relevance to our analysis. Essintial did not bring an equitable estoppel claim in the District Court, and the company has not relied on equitable estoppel here. Typically, equitable estoppel "will not lie against the Government as it lies against private litigants," and "claims for estoppel cannot be entertained where public money is at stake." *OPM v. Richmond*, 496 U.S. 414, 419, 427 (1990); *see also Monongahela Valley Hosp., Inc. v. Sullivan*, 945 F.2d 576, 588-89 (3d Cir. 1991); *Seville Indus.*, 144 F.4th at 750.

Any superficial appeal to the "bait and switch" claim loses traction upon examination of the record. On April 2, 2020, the lender sent Essintial an email stating that "1099 employees are allowed to be included in payroll costs." A 45. On the same day as the email, the SBA posted contrary guidance on its website in the Interim Final Rule. *See* 85 Fed. Reg. at 20814. Essintial submitted the loan application two days after the conflicting guidance from the lender and the SBA. Consistent with the Rule, the application instructions stated that "payroll costs consist of compensation to employees" as well as a list of other items consistent with subsection (aa), "and for an independent contractor or sole proprietor" a list of items consistent with subparagraph (bb). A 64. Essintial represented that it had 359 "employees" in its PPP application, and the company did not break out independent contractors in response to that question.

We recognize that the Interim Final Rule was not effective until April 15, 2020, and that the Rule was not retroactive. The SBA is not asking for retroactive application or deference to its interpretation, and we afford the Rule neither of those things. Nevertheless, Essintial cannot successfully invoke equity after having received a clear indication of the government's position prior to the issuance of the loan. Once these details are brought to the fore, the SBA's response to Essintial's subsequent forgiveness application in 2021 was not as harsh as Essintial suggests. Certainly not enough to drive a different interpretation of the statute.

## IV.

The text and structure of the CARES Act persuade us that Essintial's payments to independent contractors were not "payroll costs" for purposes of a PPP loan. That is the best interpretation of the statute. Therefore, the SBA did not violate the Administrative Procedure Act. Accordingly, we will reverse and remand for further proceedings consistent with this opinion.