**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BEATRICE MIRANDA,
            *Petitioner-Appellee,*

v.

VINCENTE ANCHONDO, Supervisory
Correctional Specialist, Bureau of
Indian Affairs, Office of Justice
Services, Division of Corrections,
District 3,
            *Respondent-Appellant,*

and

KURT BRAATZ, Commander,
Detention, Coconino County
Detention Facility; TRACY NIELSEN,
Interim Chief, Pascua Yaqui Tribe
Department of Public Safety;
CHRIS HARNEY, Main Officer,
Truxton Canon Correctional
Facility,
            *Respondents.*

No. 10-15167

D.C. No.
3:09-cv-08065-PGR

1135

BEATRICE MIRANDA,
            *Petitioner-Appellee,*

            v.

TRACY NIELSEN, Interim Chief,
Pascua Yaqui Tribe Department of
Public Safety,
            *Respondent-Appellant,*

            and

KURT BRAATZ, Commander,
Detention, Coconino County
Detention Facility, CHRIS HARNEY,
Main Officer, Truxton Canon
Correctional Facility; VINCENTE
ANCHONDO, Supervisory
Correctional Specialist, Bureau of
Indian Affairs, Office of Justice
Services, Division of Corrections,
District 3,
            *Respondents.*

No. 10-15308

D.C. No.
3:09-cv-08065-PGR

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, Senior District Judge, Presiding

Argued and Submitted
June 16, 2011—San Francisco, California

Filed August 17, 2011
Amended February 6, 2012

Before: Mary M. Schroeder and Carlos T. Bea,
Circuit Judges, and Janis L. Sammartino, District Judge.*

Opinion by Judge Sammartino

---

*The Honorable Janis L. Sammartino, District Judge for the U.S. District Court for Southern California, San Diego, sitting by designation.

## COUNSEL

John M. Sands, Federal Public Defender, and Daniel L. Kaplan (argued), Assistant Federal Public Defender, Phoenix, Arizona, for the petitioner-appellee.

Dennis K. Burke, United States Attorney, Randall M. Howe, Deputy Appellate Chief, and Karla Hotis Delord, Assistant U.S. Attorney, Phoenix, Arizona, for the respondent-appellant Vincente Anchondo.

Amanda Sampson Lomayesva (argued), and Kimberly Van Amburg, Assistant Attorneys General, Pascua Yaqui Tribe, Office of the Attorney General, Tucson, Arizona, for respondent-appellant Tracy Nielsen.

## ORDER

The Opinion filed August 17, 2011, slip op. 10899, and appearing at 654 F.3d 911 (9th Cir. 2011), is amended as follows:

> At slip op. 10906, at the end of the final full paragraph; 654 F.3d at 915, end of second paragraph, add footnote "[3] Our opinion in *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980), could be read as holding that a failure to object to the magistrate judge's legal conclusions constitutes automatic waiver. As we explained in *Martinez*, 951 F.2d at 1156 n.4, however, that broad reading is incorrect. We thus clarify that the broad waiver rule suggested in *McCall* is not good law."

With these amendments, the panel has voted to deny the petition for panel rehearing. Judge Bea has voted to deny the petition for rehearing en banc, and Judges Schroeder and Sammartino have so recommended.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED. Further petitions for rehearing and rehearing en banc shall not be entertained.

## OPINION

SAMMARTINO, District Judge:

In these consolidated appeals, Respondents Vincente Anchondo and Tracy Nielsen appeal the district court's order granting Petitioner Beatrice Miranda's amended petition for writ of habeas corpus. The Pascua Yaqui Tribal Court convicted Petitioner of eight criminal violations arising from a single criminal transaction. The tribal court sentenced her to two consecutive one-year terms, two consecutive ninety-day terms, and four lesser concurrent terms, for a total term of 910 days' imprisonment. On habeas review, the district court concluded that the Indian Civil Rights Act, 25 U.S.C. § 1302(7) (2009),[1] prohibited the tribal court from imposing consecutive sentences cumulatively exceeding one year for multiple criminal violations arising from a single criminal transaction. Respectfully, we disagree with the district court and hold that § 1302(7) unambiguously permits tribal courts to impose up to a one-year term of imprisonment for each discrete criminal violation. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an enrolled member of the Pascua Yaqui Tribe (the Tribe). On the evening of January 25, 2008, while drunkenly wandering the Pascua Yaqui Indian Reservation, Petitioner stumbled upon M.V.,[2] a minor teenager. Apparently believing that M.V. was laughing at her, Petitioner drew a knife and initiated a profanity-laden chase scene across the reservation.

---

[1] Unless otherwise noted, all subsequent references to § 1302 are to the version that was in effect when Petitioner was sentenced. *See infra* note 4.

[2] Because the victim is a minor, we refer to her using only her initials.

M.V. ran home and alerted her sister, Bridget, that a woman was chasing her with a knife. Bridget went outside to investigate, where she observed an agitated Petitioner, yelling and brandishing the knife. Petitioner ignored Bridget's pleas to leave; instead, she raised the knife and threatened to throw it at the girls. In a last-ditch effort to protect herself and her sister, M.V. took aim with a basketball and launched it at Petitioner, hitting Petitioner squarely in the face.

Petitioner retreated across the street but continued to shout obscenities and threats. She finally left after Bridget called the police, who quickly apprehended Petitioner near the girls' home.

The Tribe filed a criminal complaint charging Petitioner with eight violations of the Pascua Yaqui Tribal Criminal Code: two counts of endangerment, two counts of threatening and intimidating, two counts of aggravated assault, and two counts of disorderly conduct. Petitioner appeared pro se at trial, and the Pascua Yaqui Tribal Court found her guilty on all eight counts. The tribal court sentenced her to a determinate term of 910 days' imprisonment as follows: (1) two consecutive 365-day terms on the aggravated assault counts; (2) two consecutive ninety-day terms on the threatening and intimidating counts; (3) two concurrent sixty-day terms on the endangerment counts; and (4) two concurrent thirty-day terms on the disorderly conduct counts. The sentence was reduced by 114 days for time served.

Petitioner appealed her conviction and sentence to the Pascua Yaqui Tribe Court of Appeals, arguing, *inter alia*, that her 910-day sentence violated the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(7). The tribal appellate court rejected Petitioner's arguments and affirmed her conviction on all counts.

Petitioner subsequently filed an amended petition for writ of habeas corpus pursuant to 25 U.S.C. § 1303 and 28 U.S.C.

§ 2241, again arguing that her sentence violated § 1302(7). The parties cross-moved for summary judgment, and the magistrate judge issued a report and recommendation (R&R) advising the district court to grant Petitioner's motion for summary judgment, deny Respondents' cross-motion, and grant Petitioner's amended petition. The magistrate judge explicitly adopted the reasoning of *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176 (D. Minn. 2005), and concluded that, in enacting § 1302(7), "Congress did not intend to allow tribal courts to impose multiple consecutive sentences for criminal violations arising from a single transaction." Therefore, like the *Spears* court, the magistrate judge found that the phrase "any one offense" in § 1302(7) meant "a single criminal transaction."

The magistrate judge ordered Respondents to file written objections to the R&R within ten days, subsequently extended to "no later than noon" on January 11, 2010. Both Respondents ultimately filed objections, but did so over four hours late.

On January 12, 2010, the district court adopted the magistrate judge's R&R, granted Petitioner's amended petition, and ordered the tribal court to reduce Petitioner's sentence to one year and release her from custody. Noting the untimeliness of Respondents' objections, the district court nevertheless considered them and found them unpersuasive. The district court agreed with the magistrate judge that "the 'any one offense' language of . . . § 1302(7) [was] properly interpreted to include all tribal code violations committed during a single transaction."

## ANALYSIS

### 1.  Respondents did not waive their right to appeal by filing untimely objections to the magistrate judge's R&R.

[1] Petitioner argues that Respondents' untimely objections to the magistrate judge's R&R waived Respondents'

right to appeal the district court's adoption of the R&R. We disagree.

Whether an appellant has waived her statutory right to appeal is a matter of law reviewed de novo. *United States v. Gianelli*, 543 F.3d 1178, 1182 (9th Cir. 2008). Although failure to object to a magistrate judge's factual findings waives the right to challenge those findings, "[i]t is well settled law in this circuit that 'failure to file objections . . . does not [automatically] waive the right to appeal the district court's conclusions of law.' " *Lisenbee v. Henry*, 166 F.3d 997, 998 n.2 (9th Cir. 1999) (quoting *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983), *abrogated on other grounds by United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc)); *accord Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007); *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991). Rather, "such a failure is a factor to be weighed in considering the propriety of finding waiver of an issue on appeal." *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991). If a party has failed both to object to a magistrate judge's legal conclusions and to raise the issues in its opening appellate brief, "waiver is appropriate unless there are circumstances suggesting that it will work a substantial inequity." *Id.* at 1157.[3]

**[2]** Here, Respondents objected to the R&R; granted, they were a little late. Even so, the district court addressed Respondents' objections on their merits, concluding that it was "unpersuaded by the respondents' objections." Moreover, Respondents' arguments on appeal implicate the district court's legal conclusions regarding the meaning of § 1302(7).

---

[3]Our opinion in *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980), could be read as holding that a failure to object to the magistrate judge's legal conclusions constitutes automatic waiver. As we explained in *Martinez*, 951 F.2d at 1156 n.4, however, that broad reading is incorrect. We thus clarify that the broad waiver rule suggested in *McCall* is not good law.

They do not challenge the magistrate judge's factual findings. Unlike the appellant in *Martinez*, Respondents raised their arguments in their opening appellate briefs. *Id.* at 1156. "Thus, [they are] entitled to the 'ordinary' presumption that failure to object to the magistrate judge's report, 'standing alone,' does not constitute waiver." *Robbins*, 481 F.3d at 1147 (quoting *Martinez*, 951 F.2d at 1156).

## 2. Section 1302(7) unambiguously permits imposition of up to a one-year term of imprisonment for each criminal violation.

Respondents argue that the district court erred in interpreting § 1302(7) to prohibit tribal courts from imposing consecutive sentences cumulatively exceeding one year for multiple criminal violations arising from a single transaction. More specifically, Respondents contend that the statutory language "any one offense" has a plain meaning, and that the district court erred in relying on the statute's legislative history to manufacture ambiguity in this otherwise clear language. We agree.

We review de novo a district court's decision to grant a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *United States v. Lemoine*, 546 F.3d 1042, 1046 (9th Cir. 2008) (quoting *Khotesouvan v. Morones*, 386 F.3d 1298, 1299 (9th Cir. 2004)). The construction or interpretation of a statute is a question of law also reviewed de novo. *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003).

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (alteration in original) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Thus, statutory interpretation "begins with the statutory text." *Id.* "If the statutory language is unambiguous and the statutory scheme is 'coherent and con-

sistent,' " judicial inquiry must cease. *In re Ferrell*, 539 F.3d 1186, 1190 n.10 (9th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Resorting to legislative history as an interpretive device is inappropriate if the statute is clear. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *accord United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1143 (9th Cir. 2008).

"[U]nless otherwise defined, words [of a statute] will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And under the doctrine of *in pari materia*, words in different sections of the same statute should be construed similarly. *Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972).

**[3]** Section 1302(7) provides, in relevant part, that an Indian tribe exercising powers of self-government shall "in no event impose for a conviction of *any one offense* any penalty or punishment greater than imprisonment for a term of one year." 25 U.S.C. § 1302(7) (emphasis added). The pre-2010 version of the ICRA did not define "offense" as used in § 1302(7).[4] *But see* 25 U.S.C. § 1302(e) (2011) (defining "offense"). Accordingly, we must determine whether the term had an ordinary, contemporary, common meaning in 1968, when Congress enacted the ICRA.

---

[4]In 2010, Congress rewrote § 1302. *See* Tribal Law and Order Act of 2010, Pub. L. No. 111-211, § 234(a), 124 Stat. 2258, 2279-81. Unlike the former version, the amended statute permits up to a three-year term for "any 1 offense" in certain circumstances. 25 U.S.C. §§ 1302(a)(7)(C), (b) (2011). It also explicitly defines "offense" to mean "a violation of a criminal law," *id.* § 1302(e), and permits consecutive sentences up to a cumulative total of nine years, *id.* § 1302(a)(7)(D). However, if a tribal court metes out this enhanced punishment in a single "criminal proceeding," the defendant must receive something akin to the full panoply of procedural rights that would be due a criminal defendant prior to conviction. *Id.* § 1302(c).

**[4]** Contrary to Petitioner's contention, "offense" had an established meaning in 1968: "A crime or misdemeanor; a breach of the criminal laws." Black's Law Dictionary 1232 (4th ed. 1968); *accord* Webster's Seventh New Collegiate Dictionary 586 (1965) (defining "offense" as "an infraction of law; crime"); Webster's New International Dictionary 1690 (2d ed. 1959) (defining "offense" as "[a] breach of moral or social conduct; an infraction of law; a crime; . . . any public wrong, whether a crime or misdemeanor"). Contemporary case law illustrates that courts used the term to refer to a violation of a criminal law, in a manner consistent with its established meaning. *See, e.g.*, *United States v. Ewell*, 383 U.S. 116, 127 (1966) (Fortas, J., dissenting) ("In my opinion . . . the Government may not, following vacation of a conviction, reindict a defendant for additional offenses arising out of the same transaction . . . ."); *Milanovich v. United States*, 365 U.S. 551, 558 (1961) (Frankfurter, J., dissenting) ("It is hornbook law that a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen."); *Callanan v. United States*, 364 U.S. 587, 597 (1961) (holding that defendant convicted of obstructing commerce by extortion and conspiracy to commit the same had committed "two offenses" such that it was within trial court's discretion to fix separate sentences); *Harris v. United States*, 359 U.S. 19, 22 (1959) ("The three offenses[—sale of narcotics not pursuant to a written order form; purchase, sale, and distribution not in or from a stamped package; and transportation and concealment of illegally imported narcotics—]derived from one transaction, as sale of narcotics."); *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) ("[M]urder and kidnaping are not the same offense in Oklahoma."); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 789 (1946) ("It long has been settled . . . that a conspiracy to commit a crime is a different offence from the crime that is the object of the conspiracy." (internal quotation marks omitted)); *Barnett v. Gladden*, 375 F.2d 235, 238 (9th Cir. 1967) ("'[T]he test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one

transaction does not make a single offense where two are defined by the statute.' " (quoting *Conerly v. United States*, 350 F.2d 679, 681 (9th Cir. 1965)); *Forsberg v. United States*, 351 F.2d 242, 245 (9th Cir. 1965) ("While two statutory offenses are charged in this case, they describe but one assault."); *Wing Jung v. United States*, 312 F.2d 73, 75 (9th Cir. 1962) ("It is settled that the same act or transaction may constitute two distinct federal offenses . . . ."); *Vasquez v. United States*, 290 F.2d 897, 898 (9th Cir. 1961) ("Three separate offenses were . . . charged, all relating to the same transaction—the sale of narcotics, facilitation of the sale of narcotics, and facilitation of the transportation of narcotics.").

**[5]** The ordinary meaning of "offense" in 1968 is also consistent with the meaning of that term in the ICRA's double jeopardy provision. *See* 25 U.S.C. § 1302(3). In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Court held that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Twenty-six years later, the Court reaffirmed *Blockburger* in *Gore v. United States*, 357 U.S. 386, 387 (1958), holding that the defendant was properly convicted of "three distinct offenses in connection with the vending of illicit drugs . . . despite the fact that these violations of what Congress had proscribed were compendiously committed in single transactions of vending." Thus, by the time Congress enacted the ICRA in 1968, "offense" as used in the statute's double jeopardy provision had an established meaning—it meant a criminal violation with separate elements of proof, not a single criminal transaction. There is no reason to conclude that Congress meant something different when it used the term in § 1302(7). *See Erlenbaugh*, 409 U.S. at 243-44.

**[6]** The contemporary usage of "offense" to uniformly refer to a violation of a criminal law and its similar meaning in the statute's double jeopardy provision confirm that the

phrase "any one offense" in § 1302(7) is not ambiguous. Section 1302(7)'s one-year sentencing cap for "any one offense" means that a tribal court may impose up to a one-year sentence for each violation of a criminal law. As it is undisputed that Petitioner committed multiple criminal violations, the district court erred in concluding that her 910-day sentence violated § 1302(7).

Petitioner provides no principled reason to conclude that "offense" was susceptible of multiple meanings in 1968. First, although Petitioner faults Respondents for "myopically focus-[ing]" on the term "offense," Petitioner fails to explain how the prefatory words "any one" affect the interpretation inquiry. "Any one" does not modify "offense" in any salient respect other than to indicate that § 1302(7)'s sentencing cap applies to a single indiscriminate "offense," however "offense" is interpreted. *Cf.* 25 U.S.C. § 1302(e) (2011) (defining "offense" in statute containing phrase "any 1 offense").

Second, contrary to Petitioner's contention, *Bell v. United States*, 349 U.S. 81 (1955), does not illustrate that "close to the time of the ICRA's enactment, the Supreme Court found it natural to presume that a single 'transaction' constitutes a single 'offense' when construing a federal statute." The *Bell* Court held that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." 349 U.S. at 84. In the quoted passage, the Court used "offense" for its ordinary meaning—a violation of a criminal law. In fact, the very idea that a transaction *could* constitute "multiple offenses" supports the conclusion that "offense" means a discrete criminal violation. Moreover, Petitioner overlooks that, before the ICRA's enactment, the Court clarified that *Bell*'s rule of lenity does not apply to "separate offenses created by Congress at . . . different times," even if multiple offenses are committed in a single transaction. *Gore*, 357 U.S. at 391.

Third, the lower court cases Petitioner cites do not demonstrate that "offense" was ambiguous in 1968. In fact, each case recognized that the term had an ordinary, contemporary, common meaning—"a breach of law established for the protection of the public," *Dugan & McNamara, Inc. v. United States*, 127 F. Supp. 801, 804 (Ct. Cl. 1955), or "[t]he doing of that which the penal law forbids to be done," *W. J. Dillner Transfer Co. v. Int'l Bhd. of Teamsters*, 94 F. Supp. 491, 492 n.2 (D. Pa. 1950) (internal quotation marks omitted).

Finally, although Petitioner criticizes Respondents for citing "decisions in which *courts* have used the term 'offense' in a manner broadly consistent with [Respondents'] preferred interpretation," she does not identify any authority requiring this court to look to cases addressing "the question of how the term 'offense' should be construed when used in a *statute*" when interpreting § 1302(7). Rather, the statutory interpretation inquiry's focus, in the first instance, is whether "offense" had an "ordinary, contemporary, common meaning" in 1968. *Perrin*, 444 U.S. at 42.

## CONCLUSION

**[7]** Because § 1302(7) unambiguously permits tribal courts to impose up to a one-year term of imprisonment for each discrete criminal violation, and because it is undisputed that Petitioner committed multiple criminal violations, we reverse the district court's decision to grant Petitioner's amended habeas corpus petition.

**REVERSED.**