**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. DUSTIN RANDALL, *Defendant-Appellant.* | No. 20-10339 <br><br> D.C. Nos. 2:18-cr-00303-JCM-EJY-1 2:18-cr-00303-JCM-EJY <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted December 10, 2021
San Francisco, California

Filed May 20, 2022

Before:  Kim McLane Wardlaw, Daniel A. Bress, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay;
Dissent by Judge Wardlaw

## SUMMARY[*]

### Criminal Law

Answering two questions of first impression in this circuit, the panel affirmed a sentence imposed on Dustin Randall for distributing and receiving child pornography in violation of 18 U.S.C. § 2252A.

The panel held that to be eligible for a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B), which applies to offenders who distribute child pornography "in exchange for any valuable consideration," the defendant need not actually receive the "valuable consideration," and that the district court therefore did not err in applying the enhancement.

The panel held that the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014(a), mandates a $5,000 assessment for each of a defendant's counts of conviction—not a single assessment per defendant in the case. The panel explained that § 3014(a) works in conjunction with 18 U.S.C. § 3013, to which § 3014 is closely related in terms of text, purpose, and statutory structure; and observed that every circuit court has interpreted § 3013's assessment on a person "convicted of an offense" to apply separately to each count of conviction rather than to each offender. The panel wrote that the ordinary meaning of § 3014's "convicted of an offense" also supports a separate assessment per conviction. The panel concluded that the district court therefore did not err in

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

assessing a fine of $5,000 for each of Randall's two counts of conviction.

Judge Wardlaw dissented from the portion of the majority opinion concerning the § 3014(a) assessment. She wrote that the majority's conclusion that § 3014(a) imposes a per-count assessment is based on a flawed reading of § 3013, an earlier enacted statute that differs markedly from § 3014 in both text and structure. She wrote that whether the court should impose the § 3014 assessment turns on the nature of the offense—not the number of offenses of conviction.

The panel rejected Randall's remaining objections to his sentence in a concurrently filed memorandum disposition.

**COUNSEL**

Amy B. Cleary (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellant.

Elham Roohani (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Christopher Chiou, Acting United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

BUMATAY, Circuit Judge:

Dustin Randall was convicted of distributing and receiving child pornography in violation of 18 U.S.C. § 2252A. He challenges the sentences imposed, raising two questions of first impression:

First, U.S. Sentencing Guideline § 2G2.2(b)(3)(B) provides for a five-level enhancement for offenders who distribute child pornography "in exchange for any valuable consideration." While the enhancement requires that the offender share pornographic material, we have never answered whether the offender must also receive the "valuable consideration." Our sister circuit courts are seemingly divided on this question. One circuit holds that the enhancement does not depend on the receipt of valuable consideration. *See United States v. Oliver*, 919 F.3d 393, 403–04 (6th Cir. 2019). Another circuit appears to hold the opposite. *See United States v. Halverson*, 897 F.3d 645, 652 (5th Cir. 2018).

Second, the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014(a), mandates a $5,000 special assessment for defendants convicted of certain sex crime offenses, including the distribution and receipt of child pornography. We must decide whether the $5,000 assessment attaches to each offense of conviction or whether the statute permits only a single assessment of $5,000 for each defendant per case. Once again, the circuit courts are split. One circuit holds that a $5,000 assessment must be imposed for each eligible conviction. *See United States v. Johnman*, 948 F.3d 612, 617 (3d Cir. 2020). Another concludes that a defendant can only be assessed one time per case—no matter the

number of convictions. *See United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020).

We answer both questions today. Based on the text of the Guideline and the statute, we hold (1) that § 2G2.2(b)(3)(B) does not require the defendant to receive any "valuable consideration"; and (2) that § 3014(a) requires a $5,000 fine per offense. We thus affirm the district court's sentence.[1]

## I.

In 2017, Las Vegas Metropolitan Police Department detectives assigned to the Internet Crimes Against Children Task Force uncovered Randall's criminal activity through the investigation of David Proctor—a suspected trader of child pornography. Detectives investigated Proctor's use of Kik, a free instant messaging mobile application, for distribution of child pornography.

After securing a warrant for Proctor's Kik account, detectives discovered a June 2017 conversation between Proctor and Randall. In relevant part, Proctor and Randall discussed the following:

> **Proctor**: Can I join group? How young
>
> **Randall**: Young and send to join
>
> **Proctor**: [sends a Dropbox link containing child pornography]

---

[1] In a concurrently filed memorandum disposition, we reject Randall's remaining objections to his sentence.

Can I get one or join group

?

Do you trade back

**Randall**: I trade back and yeah the group is dead now it was going last night

[sends Dropbox link]

**Proctor**: Do you have babies

Or mega link

Have more. I sent two

Can you send from group

[sends three Dropbox links containing child pornography]

Have any more or younger

. . .

**Proctor**: Can you send more or different

CAn you send more [sic]

?

Send more

**Randall**: I don't trade with impatient mother fuckers

**Proctor**: Sorry I'll wait

Send when you can no rush

I have baby to trade

**Randall**: [sends Dropbox link containing child pornography]

So Proctor began the conversation by requesting to join the Kik group Randall belonged to, and Randall responded that he had to "send" child pornography "to join" the group. Proctor then sent Randall a link to Dropbox, a cloud-based virtual storage provider, that contained 272 videos and 34 images of child pornography. Later, Proctor asked Randall if he "trade[s] back"—inquiring if Randall wanted to send back pornography in return. Randall confirmed that he "trade[s] back" and then sent Proctor a Dropbox link, which the government asserted contained child pornography. Proctor later sent three more Dropbox links to Randall, presumably also containing child pornography. In return, Proctor repeatedly asked Randall to "[s]end more." After some back and forth, Randall eventually sent Proctor another Dropbox link containing child pornography.

After identifying Randall in December 2017, detectives executed a search warrant on his home. Randall waived his *Miranda* rights and agreed to speak with the investigators. Randall admitted to trading child pornography on his Kik account. He expressed remorse and stated that he knew his actions were wrong.

In January 2018, detectives received information from Randall's Dropbox account.   The account contained 92 videos and 24 images of child pornography.   Between Randall's own Dropbox account and the link sent to him by Proctor, Randall had 364 videos of child pornography and 75 images involving the sexual exploitation of children.

In August 2018, Las Vegas detectives arrested Randall on state charges.  A federal criminal complaint was then filed against him in September 2018, and he was arraigned in federal court.  Without a plea agreement, Randall pleaded guilty to one count of receipt of child pornography and one count of distribution of child pornography, both in violation of 18 U.S.C. § 2252A(a)(2), (b).

At sentencing, the district court determined that Randall had a total offense level of 37, with a Sentencing Guidelines range of 210 to 262 months.  The statutory maximum term of imprisonment for each of Randall's offenses was 240 months.   In calculating Randall's offense level, the district court applied a five-level enhancement for the exchange of child pornography for valuable consideration. *See* U.S.S.G. § 2G2.2(b)(3)(B).  The district court sentenced Randall to 96 months' imprisonment and a lifetime term of supervised release.   Under the Justice for Victims of Trafficking Act, the district court also imposed a $5,000 fine on each of Randall's two offenses—for a total of $10,000.

Randall now appeals his sentence and fine.  We review a district court's interpretation of the Guidelines de novo, its application of the Guidelines to the facts of the case for abuse of discretion, and its factual findings for clear error. *United States v. Hong*, 938 F.3d 1040, 1051 (9th Cir. 2019).  We review a district court's interpretation of a statute de novo. *United States v. Harris*, 983 F.3d 1125, 1126 (9th Cir. 2020).

## II.

We confront two important questions in this case: (1) whether a defendant must receive "valuable consideration" to be eligible for the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B); and (2) whether assessments under the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014(a), should be imposed on a per-count or a per-defendant basis. We answer the first question in the negative—the defendant need not actually receive the "valuable consideration" to receive the § 2G2.2(b)(3)(B) enhancement. As to the second question, we conclude that § 3014(a) mandates a $5,000 assessment for each of a defendant's counts of conviction—not a single assessment per defendant in the case.

## A   The Valuable Consideration Enhancement

We first turn to the valuable consideration enhancement under § 2G2.2(b)(3)(B). Randall challenges two aspects of the district court's application of the valuable consideration enhancement—first on legal and second on factual grounds. We disagree with Randall on both.

## 1.

As amended in 2016, § 2G2.2(b)(3)(B) provides for a five-level enhancement when a defendant exchanges child pornography for "valuable consideration." U.S.S.G. § 2G2.2(b)(3)(B). "Valuable consideration" refers to the exchange of "something of valu[e]," such as "other child pornographic material, preferential access to child pornographic material, or access to a child." U.S.S.G. § 2G2.2 cmt. n.1. As the Sentencing Commission explained, the enhancement accounts for the "higher level of culpability" when a defendant has a "specific purpose" to

distribute child pornographic material to another person in "exchange for valuable consideration." U.S.S.G. Supp. to App. C at 136–37. Without the exchange for "valuable consideration," unless another enumerated enhancement applies, offenses involving only distribution generally lead to a two-level increase. U.S.S.G. § 2G2.2(b)(3)(F).

Here, the parties disagree about whether the § 2G2.2(b)(3)(B) enhancement requires the completion of the exchange for "valuable consideration." Randall asserts that a defendant must *actually receive* the "valuable consideration" for the enhancement to apply. But the government contends that a defendant must only complete his end of the bargain; it is unnecessary for the defendant to receive valuable consideration. As we note below, Randall could not prevail even if receipt of valuable consideration were required; Randall did, in fact, receive valuable consideration in the form of child pornography. But because the legal question is squarely presented here, and because there is value in providing clarity on the scope of criminal law and punishment, we proceed to address whether Randall must have received valuable consideration in order for the § 2G2.2(b)(3)(B) enhancement to be imposed.

To resolve the parties' competing interpretations, we turn to the Guideline's text and any accompanying Application Notes. *See United States v. Prien-Pinto*, 917 F.3d 1155, 1157 (9th Cir. 2019) (observing that Application Notes are the "authoritative" interpretation and explanation of the Guidelines, unless they are "inconsistent with, or a plainly erroneous reading of," the Guidelines (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Section 2G2.2(b)(3)(B) provides that "[i]f the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain, increase

by **5** levels." Application Note 1 to § 2G2.2 further explains that the phrase "'[t]he defendant distributed in exchange for any valuable consideration' means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person[.]" U.S.S.G. § 2G2.2 cmt. n.1.

Based on the text of the Guideline and commentary, § 2G2.2(b)(3)(B) has three elements: (1) the defendant agreed to an exchange with another person; (2) the defendant knowingly distributed child pornography to the other person; and (3) the defendant's distribution was for the specific purpose of obtaining something of valuable consideration from the other person.

But we can't find a requirement that the defendant must also *receive* the valuable consideration from the other person. Look at the text. An "exchange" means the "action," "act," or "process" of "reciprocal giving and receiving." Oxford English Dictionary Online. An "exchange" then involves two actions—giving and receiving—that can occur in either order. So a defendant can distribute pornographic material in "exchange" for valuable consideration by sending first or receiving first—the sequence doesn't matter.

For example, a defendant can send pornography after receiving pornography from another person or can send the pornography in expectation of receiving pornography from the other person. In both cases, the defendant has acted as part of an exchange or trade for pornography. And nothing in the text of the Guideline or the Application Note requires the completion of the two-step process of giving and receiving. Indeed, the commentary focuses on the defendant's *agreement* to the exchange and the defendant's

completion of his part of the bargain (distributing the child pornography)—not the completion of the transaction. *See* U.S.S.G. § 2G2.2 cmt. n.1. So whether the defendant ultimately receives the valuable consideration in return is immaterial.

With that interpretation, we align ourselves with the Sixth Circuit. It too rejected a requirement that the "defendant actually *receive* the thing of value" for the § 2G2.2(b)(3)(B) enhancement to apply. *See Oliver*, 919 F.3d at 403–04. The Sixth Circuit looked to the Guideline's text and held that "the plain language of the enhancement and application Note fail to support such an element." *Id.* It also viewed such a requirement as hamstringing law enforcement because undercover officers cannot comply with a defendant's request to send child pornography. *Id.* Randall criticizes this rationale. In his view, cases involving undercover law enforcement officers should warrant a lesser enhancement. Contrary to Randall's view, however, the Guideline's commentary makes clear that the critical factors are the defendant's state of mind and actions—not the other person's state of mind, actions, or status as an undercover police officer.

To be sure, the Fifth Circuit has potentially adopted the position that Randall now takes. *See Halverson*, 897 F.3d at 652. In describing the "test" for the valuable consideration enhancement, the Fifth Circuit held that a court must find that "the valuable consideration came from th[e] person" with whom the defendant agreed to an exchange. *Id.* The Fifth Circuit purportedly derived this element from the Application Note. *Id.* But for the reasons stated above, we think the better textual argument is that § 2G2.2(b)(3)(B) requires no such element.

Randall lastly points to the pre-2016 Guidelines to show that § 2G2.2(b)(3)(B) requires a defendant to receive valuable consideration.    Before 2016, § 2G2.2(b)(3)(B) stated, "Distribution for the receipt, *or expectation of receipt*, of a thing of value, but not for pecuniary gain, increase by 5 levels."   U.S.S.G. § 2G2.2(b)(3)(B) (2015) (emphasis added).    Randall contends that, since the Guideline now excludes the phrase "expectation of receipt," anticipation of receiving pornography and the like is not enough; the trade must be consummated.  The Commission, however, stated that the amendment to § 2G2.2(b)(3)(B) was meant to clarify the "mental state required for distribution." U.S.S.G. Supp. to App. C at 137.   So according to the Commission, the amendment focused on the defendant's state of mind, not whether the transaction was completed. *Id.*  Without further textual evidence, we will not read a new element   into   § 2G2.2(b)(3)(B)   based   on   pre-2016 considerations.

We thus join the Sixth Circuit in rejecting the requirement that a defendant receive valuable consideration in   return   for   distributing   child   pornography   for § 2G2.2(b)(3)(B) to apply.

**2.**

Randall   next   argues,   regardless   of   the   legal interpretation, that § 2G2.2(b)(3)(B) doesn't apply to the facts of his case.  We disagree.  That's because the Kik thread between Randall and Proctor readily supports application of § 2G2.2(b)(3)(B).  To recap, the elements of § 2G2.2(b)(3)(B)   are:   (1)   the   defendant   agreed   to   an exchange with another person; (2) the defendant knowingly distributed child pornography to the other person; and (3) the defendant's distribution was for the specific purpose of

obtaining something of valuable consideration from the other person.

First, Randall and Proctor agreed to an exchange for valuable consideration. Proctor initially asked to join the Kik group and Randall responded, "send to join"—meaning send child pornography to be added to the group. In response, Proctor sent a link containing child pornography. Proctor then asked, "Do you trade back[?]"—inviting Randall to trade pornographic material with him. Randall agreed to barter by replying, "I trade back," and by sending a Dropbox link containing child pornography. Later on, Proctor asked Randall, "Have any more or younger[?]" Randall eventually responded by sending another link of child pornography. This conversation easily satisfies the first element of § 2G2.2(b)(3)(B).

Second, Randall distributed child pornography to Proctor. Two times during the Kik conversation, Randall sent Proctor a Dropbox link, which the government contended contained child pornography. From the context of the conversation, Randall meant to send child pornography in the Dropbox links. Randall sent the first Dropbox link after Proctor sent him child pornography and agreed to "trade back." Randall then sent the second Dropbox link after Proctor sent him three more links of child pornography and implored him to "[s]end when you can[.]"[2] On appeal, Randall doesn't seriously contest that he sent

---

[2] Because Randall received pornographic material from Proctor in return for sending child pornography, the valuable consideration enhancement would apply even under the test articulated by the Fifth Circuit in *Halverson*.

child pornography during the conversation; so the second element of § 2G2.2(b)(3)(B) is satisfied.

Finally, Randall acted with the specific purpose of obtaining valuable consideration in return for sending the child pornography to Proctor. As the conversation above establishes, Randall expected to (and did) receive pornographic material from Proctor in exchange for sending him child pornography. To the extent Randall argues that the district court failed to make sufficient findings to support this element, we disagree. The district court stated that Randall was "trading" images of child pornography. Moreover, at sentencing, the government explained that the Kik messages showed that "Randall was trading child pornography for child pornography." The government also stated that the chat established that Randall was telling Proctor to "send child pornography to get in [the group]" and that they then "discussed trading child pornography." The government contended that this was sufficient to show "intent there[.]" The district court agreed and overruled the defense's objection to the enhancement. We thus see no abuse of discretion and affirm the district court's application of the five-level enhancement under § 2G2.2(b)(3)(B).

## B. The Justice for Victims of Trafficking Act

We next discuss whether the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014(a), mandates an assessment on a per-count or per-offender basis. The district court imposed a $5,000 special assessment under § 3014(a) for each of Randall's two convictions—totaling $10,000. Randall argues that the Act permits only one $5,000 assessment per defendant per case—no matter the number of qualifying convictions. The government instead argues that the statute authorizes a $5,000 assessment for each eligible conviction. As mentioned, our sister courts are divided on

the issue. The Third Circuit agrees with the government, *see United States v. Johnman*, 948 F.3d 612, 616–20 (3d Cir. 2020), while the Second Circuit concurs with Randall, *see United States v. Haverkamp*, 958 F.3d 145, 149 (2d Cir. 2020). Based on the text and the relevant statutory scheme, we hold that § 3014(a) requires an assessment of $5,000 for each qualifying conviction.

As always, we begin with the text. *See United States v. Herrera*, 974 F.3d 1040, 1047 (9th Cir. 2020). The Act provides:

> (a) In General.—Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 11, 2022, in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under—
>
> > (1) chapter 77 (relating to peonage, slavery, and trafficking in persons);
> >
> > (2) chapter 109A (relating to sexual abuse);
> >
> > (3) chapter 110 (relating to sexual exploitation and other abuse of children);
> >
> > (4) chapter 117 (relating to transportation for illegal sexual activity and related crimes); or

> (5) section 274 of the Immigration and
> Nationality Act (8 U.S.C. 1324) (relating
> to human smuggling) . . . .

18 U.S.C. § 3014(a).  Put simply, § 3014(a) requires that
courts: "(1) assess (2) an amount of $5,000 (3) on any non-
exempt person or entity (4) convicted of an offense (5) under
certain enumerated chapters of the criminal code."
*Johnman*, 948 F.3d at 617.

The key issue here is how to interpret "convicted of an
offense."  Does it mean a $5,000 assessment for each time
the person is "convicted of [a discrete enumerated] offense"?
If that's the case, then Randall's assessment of $10,000 was
proper since he was twice "convicted of an offense."   Or
does it mean a single $5,000 assessment when a person is
"convicted of [any one of the enumerated] offense[s]?"  If
so, then Randall could be fined only $5,000 for his two child
pornography convictions.

Lucikly, we do not operate on a blank slate in unpacking
this tricky textual question.    That's because Congress
enacted the Justice for Victims of Trafficking Act against the
backdrop of the phrase's settled meaning.  As expressly
mentioned in the statute, § 3014(a) works in conjunction
with 18 U.S.C. § 3013. *See* 18 U.S.C. § 3014(a) (imposing
the special assessment "in addition to the assessment
imposed under [18 U.S.C.] section 3013").  Section 3013, in
turn, provides:

> (a) The court shall assess on any person
> convicted of an offense against the United
> States—
>
> (1) in the case of an infraction or a
> misdemeanor—

(A) if the defendant is an individual—
[an amount ranging from $5 to $25]

. . .

(2) in the case of a felony—

(A) the amount of $100 if the defendant is an individual[.]

18 U.S.C. § 3013(a).

As you can see, the special assessments in both § 3013(a) and § 3014(a) apply to any person "convicted of an offense." And that wasn't accidental. By way of background, Congress enacted § 3013 in 1984 to fund the Crime Victims Fund. *See* Victims of Crime Act of 1984, Pub. L. No. 98-473, §§ 1402, 1405(a) (1984). The Crime Victims Fund provides, among other things, funding resources to programs supporting crime victims. 34 U.S.C. § 20101. In 2015, Congress established a similar Domestic Trafficking Victims' Fund to provide financial support to victims of human trafficking and child exploitation. Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, § 101 (2015). Congress simultaneously enacted the special assessment in § 3014(a) to fund the Domestic Trafficking Victims' Fund. 18 U.S.C. § 3014(c), (e), (h). In sum, § 3014 is closely related to § 3013 in terms of text, purpose, and statutory structure.

How courts have interpreted the phrase "convicted of an offense" under § 3013 provides important guidance. That's because when a phrase is "obviously transplanted from another legal source," such as other legislation, "it brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733

(2013) (quoting Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)). In other words, when Congress adopts a phrase with a settled judicial interpretation, absent some indication to the contrary, we presume that Congress chose to give the phrase its established meaning. *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1004 (9th Cir. 2014); *see also United States v. Prasad*, 18 F.4th 313, 322–23 (9th Cir. 2021) (observing that the "prior construction canon" applies "to interpretations of the same wording in related statutes").

In this case, we have buckets of "soil" to help us give meaning to the phrase "convicted of an offense." Every circuit court has interpreted § 3013's assessment on a person "convicted of an offense" to apply separately to each count of conviction rather than to each offender. *See United States v. Pagan*, 785 F.2d 378, 381 (2d Cir. 1986); *United States v. Donaldson*, 797 F.2d 125, 128 (3d Cir. 1986); *United States v. Dobbins*, 807 F.2d 130, 132 (8th Cir. 1986); *United States v. Smith*, 857 F.2d 682, 686 (10th Cir. 1988); *United States v. Nguyen*, 916 F.2d 1016, 1020 (5th Cir. 1990); *United States v. McGuire*, 909 F.2d 440, 441–42 (11th Cir. 1990) (per curiam); *United States v. Luongo*, 11 F.3d 7, 10 (1st Cir. 1993).

Most significantly, the Supreme Court formally settled the question in *Rutledge v. United States*, 517 U.S. 292 (1996). In that case, the Court held that "[Section] 3013 requires a federal district court to impose a [then-]$50 special assessment for *every conviction*." *Id.* at 301 (emphasis added). The Court further blessed an assessment on "both convictions" in the case and held that § 3013 "required" it. *Id.* at 301–02. So under § 3013, the Court said, "a second conviction will amount to a second punishment." *Id.*

We think the fact that the meaning of § 3013's text is settled is not just persuasive, it's all but conclusive. Congress sought to accomplish similar goals in enacting § 3013 and § 3014; it created a statutory framework where the two provisions work together and employed nearly identical language for the two. By doing so, Congress endorsed the long-settled interpretation of § 3013's "convicted of an offense" phrase.

Even without the prior construction canon, the ordinary meaning of § 3014's "convicted of an offense" supports a separate assessment per conviction. In another federal statute, we've accepted that "offense" means a "discrete criminal violation." *Miranda v. Anchondo*, 684 F.3d 844, 851 (9th Cir. 2012); *see also Johnman*, 948 F.3d at 617 (reaching a similar meaning for "offense" through dictionary definitions).

The phrasing "*an* offense" is also significant. Its singular construction tells us that *each* "offense" requires a separate assessment. *See Luongo*, 11 F.3d at 10 ("[B]ecause the statute is phrased in the singular, its terms imply that each offense . . . calls for a separate special assessment, even when a single defendant is simultaneously convicted of multiple charges."); *see also Villavicencio-Rojas v. Lynch*, 811 F.3d 1216, 1220 (9th Cir. 2016) (Berzon, J., concurring) (interpreting "an offense" in the context of another statute to refer to "each offense of the kind covered").

We also agree that "convicted" is "normally understood [a]s an offense-specific term." *Johnman*, 948 F.3d at 617 (explaining that "convicted" is the past participle of "convict," which means "to find or declare guilty of an offense or crime" or "to find (a person) guilty of a criminal offense" under dictionary definitions).

So taken together, "convicted of an offense" is best read as applying to each separate conviction for a statutory violation. We are also persuaded by the Third Circuit's reasoning that "it is illogical to read § 3014's application to depend not upon the number of offenses of which [the defendant] was convicted, but on the happenstance of whether she was tried for those offenses in one or more proceedings." *Id.* at 619 (simplified).

We acknowledge that the Second Circuit reached the opposite conclusion. That circuit held that "[a]s a matter of grammar and common understanding, 'an amount' on any person convicted means the amount is assessed one time." *Haverkamp*, 958 F.3d at 149. While we agree that the $5,000 amount is "assessed one time," that doesn't answer whether it is one time per defendant or per count.

The Second Circuit also relied on post-enactment legislative history—specifically, a single statement from the lead House sponsor of the Justice for Victims of Trafficking Act on the two-year anniversary of its passage. *Id.* at 150 (quoting 163 Cong. Rec. H4564 (daily ed. May 24, 2017) (statement of Rep. Poe)). But we side with most judges that find "[p]ost-enactment legislative history (a contradiction in terms)" a questionable tool of statutory interpretation. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

Finally, the Second Circuit focused on differences between § 3013 and § 3014 to conclude that the two provisions should be interpreted differently:

- § 3013 imposes a varying assessment amount based on the severity of the offense (e.g., infraction, misdemeanor, or felony), while § 3014 requires only a

"single assessment" of $5,000 for conviction of an eligible offense;

- § 3013 provides for a "nominal" amount (ranging from $5 to $100), while § 3014's assessment is $5,000; and

- § 3013 does not include an indigency exception, while § 3014 does.

*Haverkamp*, 958 F.3d at 149–50 & n.3. The Second Circuit considered these differences "too pronounced" to interpret the two statutes in "lockstep." *Id.* at 150 n.3. But none of these distinctions are significant enough to overcome the plain and settled meaning of "convicted of an offense." That Congress sought to create an assessment program for all victims of federal crimes with more "nominal" amounts is not inconsistent with Congress also seeking to create a similar scheme focused on victims of trafficking and child exploitation with a heftier amount.[3]

---

[3] We therefore respectfully disagree with our dissenting colleague, who finds the Second Circuit's approach more persuasive. The dissent makes one additional point that the Second Circuit does not appear to have advanced: that the durational provision in § 3014(g) refers to "an assessment" and "the assessment" in the singular, whereas the durational provision in § 3013(c) refers to "all assessments" in the plural. Dissent at 29. The dissent reasons that "[i]f Congress intended multiple assessments for multiple counts, it would have used the plural 'assessments'" in § 3014. Dissent at 29. But § 3014(a) itself refers to "the *assessment* imposed under section 3013," using the singular to the describe "the assessment" that we know is imposed per count of conviction. *Rutledge*, 517 U.S. at 301. And § 3013(c) earlier refers to "an assessment." The dissent thus reads too much into Congress's use of the words "assessment" and "assessments."

So, considering the text and relevant statutory scheme, we conclude that Congress intended that assessments under § 3014 be imposed on a per-count basis. Section 3014 requires a $5,000 assessment for each of a defendant's eligible convictions. The district court thus properly imposed a $10,000 assessment for Randall's two counts of conviction.[4]

### III.

The district court did not err in applying the five-level sentence enhancement under U.S.S.G. § 2G2.2(b)(3)(B) or in assessing a fine of $5,000 for each of Randall's two counts of conviction under 18 U.S.C. § 3014(a).

**AFFIRMED.**

---

WARDLAW, Circuit Judge, dissenting in part:

The Justice for Victims of Trafficking Act of 2015 (JVTA) provides that "the court shall assess *an* amount of $5,000 on any non-indigent person or entity" convicted of certain federal sexual offenses. 18 U.S.C. § 3014(a) (emphasis added). The majority interprets this fine to apply

---

[4] Randall asks us to apply the rule of lenity in rendering our interpretations of U.S.S.G. § 2G2.2(b)(3)(B) and 18 U.S.C. § 3014. But the rule of lenity is a tool of last resort—"only [to be] applie[d] where there is grievous ambiguity or uncertainty[.]" *United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017). Such an ambiguity does not exist "merely because there is a division of judicial authority over [a statute's] proper construction." *Reno v. Koray*, 515 U.S. 50, 64–65 (1995) (simplified). As the above shows, after consulting the traditional tools of interpretation, we see no grievous ambiguity and so the rule of lenity has no place here.

on a per-count basis, based on its reading of an earlier enacted, entirely different, statute that plainly assesses fines for each count of conviction, 18 U.S.C. § 3013. But § 3014 was written to impose an additional amount of $5,000 on top of the fines assessed under § 3013 for offenders convicted of sexual exploitation and trafficking, particularly of children, and differs markedly from § 3013 in both text and structure; differences we can't ignore when interpreting the meaning of § 3014. Recognizing the existing circuit split on this question, the majority chooses to follow the Third Circuit's approach in *United States v. Johnman*, 948 F.3d 612 (3d Cir. 2020), and holds that § 3014 applies on a per-count basis like § 3013. However, the Second Circuit in *United States v. Haverkamp*, 958 F.3d 145 (2d Cir. 2020), explains how thoroughly flawed that reading is and concludes that § 3014 applies on a per-offender basis. I think the Second Circuit has the better side of this split, so I respectfully dissent from that portion of the majority opinion.

We begin with the text of § 3014. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1172 (9th Cir. 2021). "We interpret statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (citation omitted). And we "interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Id*. (international quotations and citation omitted). Section 3014 provides:

> (a) In general. – Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 11, 2022, in addition to the

assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under—

(1) chapter 77 (relating to peonage, slavery, and trafficking in persons);

(2) chapter 109A (relating to sexual abuse);

(3) chapter 110 (relating to sexual exploitation and other abuse of children);

(4) chapter 117 (relating to transportation for illegal sexual activity and related crimes); or

(5) section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324) (relating to human smuggling), unless the person induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

18 U.S.C. § 3014(a).

The plain text of the statute directs the district court to "assess an amount of $5,000 on any non-indigent person or entity convicted of [a qualifying] offense . . . ." As the Second Circuit explained, "[a]s a matter of grammar and

common understanding 'an amount' on any person convicted means the amount is assessed one time." *Haverkamp*, 958 F.3d at 149. When, as here, "amount" is followed by "of" and a numerical value, that numerical value, in this case $5,000, represents a "precise sum, total, or quantity amounting to the specified figure." *Amount*, Oxford English Dictionary Online, https://tinyurl.com/3jjhrkd9 (last visited May 10, 2022). Congress could have included language that assessed an amount of $5,000 for each qualifying count of conviction, but it chose not to do so. In other words, "the text of § 3014, taken as a whole and in its context, is straightforwardly meant to be applied on a per-offender, not a per-count, basis." *Haverkamp*, 958 F.3d at 149. This should be the end of the matter.

In holding that § 3014 applies on a per-count basis, the majority adopts the Third Circuit's analysis in *Johnman*, 948 F.3d 612. Maj. Op. at 15–23. The Third Circuit in *Johnman* locked on to the phrase "convicted of an offense," *Johnman*, 948 F.3d at 616–20, and determined that, "how many assessments a court must impose turns on the meaning of the phrase 'convicted of an offense.'" *Id*. at 617. But both the Third Circuit and the majority go astray by laser-focusing on a phrase that is not determinative of the key issue: whether the district court should impose the additional assessment. Rather, whether the court should impose the assessment turns on the nature of the offense—not the number of offenses of conviction. If *one* offense is a qualifying offense under the statute, the defendant is subject to the $5,000 assessment. Therefore, delving into the meaning of the phrase "convicted of an offense" sheds no light on whether Congress intended the assessment to apply on a per-count or per-offender basis. *See United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular

phrases must be construed in light of the overall purpose and structure of the whole statutory scheme.") (citation omitted).

It is no real surprise that the meaning of "convicted of an offense" in § 3013 is well-settled. *See Rutledge v. United States*, 517 U.S. 292, 301 (1996). After all, § 3013 was enacted some twenty-five years before Congress enacted the JVTA and § 3014. But the majority's determination that the settled interpretation of § 3013 is "all but conclusive" as to § 3014's application is incorrect. Maj. Op. at 20. Congress's choice to enact separate statutes with significant structural differences demonstrates that, in fact, the exact opposite is true. Section 3013 reads:

> (a) The court shall assess on any person convicted of an offense against the United States—
>
> (1) in the case of an infraction or a misdemeanor—
>
> (A) if the defendant is an individual—
>
> > (i) the amount of $5 in the case of an infraction or a class C misdemeanor;
> >
> > (ii) the amount of $10 in the case of a class B misdemeanor; and
> >
> > (iii) the amount of $25 in the case of a class A misdemeanor; and

(B) if the defendant is a person other than an individual—

   (i)     the amount of $25 in the case of an infraction or a class C misdemeanor;

   (ii)    the amount of $50 in the case of a class B misdemeanor; and

   (iii)   the amount of $125 in the case of a class A misdemeanor;

(2) in the case of a felony—

   (A) the amount of $100 if the defendant is an individual; and

   (B) the amount of $400 if the defendant is a person other than an individual.

18 U.S.C. § 3013. "Comparing § 3014 to § 3013 reinforces our conclusion that when Congress intended multiple amounts to be assessed rather than 'an amount' it knew how to do so." *Haverkamp*, 958 F.3d at 149. By contrast to § 3014, Congress directed the courts in applying § 3013 to impose varying amounts of assessments dependent on the grade or classification of the specific offenses of which the defendant is convicted. As the Second Circuit explained, "Section 3013 specifically ties the amount of the special assessment to the classification of the offense of conviction, and therefore plainly authorizes multiple assessments where

there are multiple counts of conviction." *Id*. at 150. Moreover, the special assessments in § 3013 range from $5 to $400 based on the classification of the offense as an infraction, specific class of misdemeanor, or felony. By contrast, § 3014 "authorizes a single assessment: $5,000 if a defendant is convicted of an eligible offense. The classification of the offense and the number of offenses is not relevant to the assessment." *Id*. Had Congress intended the additional $5,000 assessment to apply on a per-count basis, it could have simply amended § 3013 to include the assessment there. Congress's choice not to do so, and to instead enact § 3014, setting forth a distinct textual structure, is telling. *See Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 353 (2013) ("Just as Congress' choice of words is presumed to be deliberate, so too are its structural choices.") (citation omitted).

Comparing the duration sections of the two statutes further supports a per-offender reading of § 3014. Section 3013(c) explains that "[t]he obligation to pay an assessment ceases five years after the date of the judgment. This subsection shall apply to *all assessments* irrespective of the date of imposition." (emphasis added). Congress used the plural "all assessments" in § 3013, signaling its intent that courts impose the assessments for each qualifying offense. By contrast, Section 3014(g) provides that "the obligation to pay *an assessment* imposed on or after the date of enactment of the Justice for Victims of Trafficking Act of 2015 shall not cease until *the assessment* is paid in full." (emphasis added). If Congress intended multiple assessments for multiple counts, it would have used the plural "assessments" here as well. That it did not do so further supports the conclusion that the $5,000 assessment in § 3014 is applied per-offender.

This reading is also supported by the statement of Representative Poe, the lead House sponsor of the JVTA, on the two-year anniversary of the JVTA's passage. He confirmed that the Act "allows a federal judge to impose an additional assessment of up to $5,000." 163 Cong. Rec. H4564 (daily ed. May 24, 2017) (statement of Rep. Poe). As the Second Circuit explained, "[w]hile not conclusive in itself, this remark lends further support to our conclusion that the special assessment in § 3014 applies on a per-offender basis." *Haverkamp*, 958 F.3d at 150.

I agree with the Second Circuit's criticism of the Third Circuit's conclusion in *Johnman* that § 3014 should be read "lockstep" with § 3013 and interpreted the same way. The two statutes are significantly different in both text and structure. As the Second Circuit reasoned,

> Section 3013 is a reticulated provision that calibrates assessments according to the severity of the offense(s)—from infractions to felonies and then sub-classifies them according to the class of misdemeanors. The assessment of § 3014 is far larger (one hundred to one thousand times greater) than the assessments provided for in § 3013. Section 3013 does not contain an indigency exception, whereas § 3014 does. Most importantly, the provision, "an amount," that underpins § 3014 differs sharply from § 3013, which specifies "the amount" for each discrete category of offense. We believe that these differences are too pronounced to justify *Johnman*'s "lockstep'" approach."

*Id*. at 150 n.3.

For these reasons, I would reverse the district court on the JVTA assessment, vacate the $10,000 assessment, and remand with instructions to impose a $5,000 assessment.