**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1490
_____

JARVIN ORLANDO LOPEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the Board of
Immigration Appeals
(No. A094-481-777)
Immigration Judge: Walter Durling
_____

Argued January 26, 2022

Before: CHAGARES, *Chief Judge*, McKEE and MATEY,
*Circuit Judges*.

(Filed:   September 9, 2022)

Sandra L. Greene [Argued]
Greene Fitzgerald Advocates and Consultants
2575 Eastern Boulevard
Suite 208
York, PA 17402
        *Counsel for Petitioner*

Brian M. Boynton
James A. Hurley [Argued]
Anna E. Juarez
United States Department of Justice
Office of Immigration Litigation
Room 5009
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge.*

Jarvin Lopez hopes to avoid deportation under § 203(b) of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), but he cannot meet the standard NACARA applies to applicants removeable for certain drug offenses. So he asks for a waiver of NACARA's requirements under § 212(h) of the Immigration and Nationality Act ("INA"), which applies to applications for adjustment of status. But § 212(h) is inapplicable because an application for NACARA

cancellation of removal is not an application for adjustment of status under the best reading of the INA. So we will deny Lopez's petition for review.

## I.

### A.     The Statutes

A bit of background frames this controversy, so we begin with a short history of the INA and NACARA. Enacted in 1952, the INA governs noncitizens' entrance into and removal from the United States. *See* 8 U.S.C. §§ 1101–1537. Among other mechanisms, the INA allows admissible aliens to apply for "adjustment of status" to "an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255. But it makes aliens inadmissible for various reasons, including for committing an enumerated criminal offense, 8 U.S.C. § 1182(a)(2), and provides for their removal, 8 U.S.C. § 1229a. INA § 212(h), in turn, gives the Attorney General discretion to grant a waiver of inadmissibility for applicants who meet the eligibility requirements. 8 U.S.C. § 1182(h).

NACARA came later, creating special eligibility standards for suspension or cancellation of removal for certain Salvadorans, Guatemalans, and Nicaraguans. NACARA §§ 202, 203, Pub. L. No. 105-100, tit. II, 111 Stat. 2160 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997). NACARA lets the Attorney General adjust the status of some otherwise-inadmissible aliens to "lawfully admitted for permanent residence," allowing them to remain in the United States. NACARA § 203(b). But Congress cabined his discretion by imposing stricter standards for applicants who have committed an offense that the INA lists as a ground for inadmissibility. *Id.*

3

This case asks whether aliens subject to these stricter standards for NACARA cancellation of removal can use an INA § 212(h) waiver to relax them again. We conclude that they cannot.

**B.      Jarvin Lopez's Story**

Lopez is a citizen of El Salvador who entered the United States without authorization in 2001. He conceded removability when the Department of Homeland Security ("DHS") initiated removal in 2009, but he applied for relief under NACARA. While removal proceedings continued, Lopez was charged with possession of marijuana. Following a guilty plea in 2015, DHS added a charge of removability under the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II), applicable to aliens who committed a controlled substance offense. That triggered a limiting provision in NACARA that bumps the requirement of continuous presence in the United States from seven to ten years, and restarts the clock from commission of the controlled substance offense. NACARA § 203(b). Lopez agrees that his 2015 drug conviction makes him ineligible for relief under NACARA. So he looked to the waiver provision in INA § 212(h) to excuse that added charge.

On a second look,[1] the Board of Immigration Appeals ("BIA") denied Lopez relief, holding that a § 212(h) waiver

---

[1] After Lopez's request under NACARA was denied, we remanded to the BIA to consider the "interplay among NACARA, [§] 212(h) waiver, the related regulations, and the reasoning of *Matter of Y-N-P-*[, 26 I. & N. Dec. 10 (BIA 2012) (holding that § 212(h) waivers are not available concurrently with applications for cancellation of removal and adjustment of status brought under INA § 240A's general cancellation of

4

may not be used with an application for NACARA cancellation of removal. Lopez filed this petition for review and, reading the law as the BIA did, we will deny the petition.[2]

## II.

Lopez argues that the BIA misinterpreted the interplay between NACARA and § 212(h) waiver, a question of law we consider de novo. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).[3] To determine the best ordinary meaning, we start with the older of the two provisions, INA § 212(h), before asking how the later-enacted NACARA § 203(b) alters that text. At least as to waivers, it does not.

removal provisions)] . . . and to articulate the reasoning underlying its decision." *Lopez v. Att'y Gen.*, 757 F. App'x 163, 167 (3d Cir. 2018). The BIA followed that order in a detailed decision, and we see no grounds for Lopez's claim of insufficient process.

[2] The BIA had jurisdiction to review the Immigration Judge's removal decision under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction over the Board's final order of removal under 8 U.S.C. § 1252(a)(1).

[3] Although we agree the BIA reached the best reading of these provisions, our duty is to examine the law independently using the ordinary tools of statutory interpretation. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 & n.9 (1984); *see also Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022).

**A. INA § 212(h) Waivers Cannot Be Used for Cancellation of Removal**

INA § 212(h) states that "[t]he Attorney General may, in his discretion, waive the application of [grounds of removal based on certain drug offenses]" when he "has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status." 8 U.S.C. § 1182(h). Section 212(h) gives the Attorney General limited discretion to excuse the consequences of certain convictions for three things: "a visa," "admission," and "adjustment of status." *Id.* And "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Raleigh & G.R. Co. v. Reid*, 80 U.S. 269, 270 (1871); *see also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–12 (2012) (discussing the negative-implication canon). Omitting "cancellation of removal" from that list reflects a congressional choice, one seeming to place NACARA applications outside of § 212(h) waivers.

But Lopez argues applications for NACARA cancellation of removal are, despite their name, also applications for "adjustment of status" under § 212(h) because a successful application means, well, an adjustment of status to lawful permanent resident. *See* NACARA § 203(b). And it is true that NACARA § 203(b) permits the Attorney General to "cancel removal of, and adjust to the status of [lawful permanent resident]," an alien who qualifies for relief. *Id.* But the meaning of § 212(h)'s phrase "adjustment of status" when enacted excludes the possibility that the statute encompasses

6

an application for *both* adjustment of status *and* cancellation of removal.[4]

---

[4] "Adjustment of status" and "cancellation of removal" are not the sort of phrases you often hear at the corner coffee shop. Polling a group of ordinary and competent English speakers on what these six words mean is likely to produce equal parts blank stares and reasonable guesses. But that does not give courts license to invent a meaning to our liking. Instead, when interpreting technical and specialized legal language, we look not for the public meaning (as none is likely to exist), but what we might call the legal meaning. *See* Richard H. Fallon, Jr., *The Meaning of Legal "Meaning" and Its Implications for Theories of Legal Interpretation*, 82 U. Chi. L. Rev. 1235, 1244 (2015) (denoting by "legal meaning" "the message or proposition that statutory or constitutional language expresses"); William Baude & Stephen E. Sachs, *The Law of Interpretation*, 130 Harv. L. Rev. 1079, 1082–83 (2017) ("Interpretation isn't just a matter of language. . . . Language will of course be an input to the process, but law begins and ends the inquiry.").

Often, legal meaning and ordinary public meaning travel together because interpretation using ordinary public meaning ensures that the people have received appropriate notice of the government's legitimate purpose. And notice is necessary for posited law to serve one of its central purposes, "coordinating society's members toward the common good." Lee J. Strang, *Originalism's Promise: A Natural Law Account of the American Constitution* 268 (2019); *see also* Conor Casey & Adrian Vermeule, *Myths of Common Good Constitutionalism*, 45 Harv. J.L. & Pub. Pol'y 103, 122 (2022) (posited law is "intrinsically reasoned and purposive, and

7

To understand the present, we must start in the past. The waiver of inadmissibility now in INA § 212(h) arose from § 5 of the Act of September 11, 1957, Pub. L. No. 85-316, 71 Stat. 639, 640. Section 5 allowed the Attorney General to grant waivers only to "aliens applying or reapplying for a visa and for admission to the United States." 8 U.S.C. § 1182(b) (1958). An amendment in 1990 added waiver authority for aliens submitting applications for adjustment of status. Pub. L. No. 101-649, 104 Stat. 4978, 5076–77 (1990). Yet that extension

---

ordered to the common good"). So when this coordinating purpose predominates, so too should the public meaning, even if a law incorporates technical terms. That is because statutes "are written to guide the actions of men. . . . If a statute is written for ordinary folk, it would be arbitrary not to . . . read [it] with the minds of ordinary men." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947). But "[i]f they are addressed to specialists, they must be read by judges with the minds of specialists." *Id.*; *see also Nix v. Hedden*, 149 U.S. 304, 306–07 (1893) (interpreting the words "fruit" and "vegetables" in the Tariff Act of 1883 according to the "ordinary meaning" "that they had in March, 1883," rather than their botanical definitions, because there was "no evidence that the words . . . acquired any special meaning in trade or commerce"). Here, Congress used the language of the specialist versed in the execution of the immigration laws. Whatever the public might read into these terms, it is only the legal meaning that explains Congress's directives in the INA and NACARA. That is the meaning we follow. *See Moskal v. United States*, 498 U.S. 103, 121 (1990) (Scalia, J., dissenting) ("[W]hen a statute employs a term with a specialized legal meaning relevant to the matter at hand, that meaning governs.").

of § 212(h) could not have included cancellation of removal applicants because cancellation of removal did not yet exist. Congress created that new type of relief, and a separate application for it, by adding § 240A to the INA in 1996. *Compare* Pub. L. No. 104-208, 110 Stat. 3009-594 (1996) (creating INA § 240A, which only provides for cancellation of removal) *with* INA § 245 (governing applications for adjustment of status). But Congress did not extend § 212(h)'s availability to applicants for that new form of relief. Given that choice, § 212(h)'s phrase "adjustment of status" could not have included "cancellation of removal" or the yet-nonexistent concept of "adjustment of status and cancellation of removal."[5]

By asking for a § 212(h) waiver to make him eligible for cancellation of removal, then, Lopez seeks to use the waiver for an unauthorized purpose, even though he *also* wants to use it for adjustment of status—an authorized purpose. An unauthorized use cannot be transmogrified by tacking on an

---

[5] The possibility that cancellation of removal could also result in adjustment of status first arose with NACARA's passage in 1997. NACARA "amended the language of sections 240A(b)(1) and (2) of the Act[, the INA's general cancellation of removal provisions,] by changing the phrase 'may cancel removal in the case of' to 'may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence.' Thus, the new language authorized the Attorney General to cancel an alien's removal *and* adjust his or her status to that of a lawful permanent resident. Previously, the Attorney General could technically only cancel an alien's removal under section 240A of the Act." *Matter of A- M-*, 25 I. & N. Dec. 66, 73 (BIA 2009); NACARA § 204.

authorized use.[6] Barring amendment by NACARA, the waiver of inadmissibility Congress authorized in INA § 212(h) may not be granted to bring about cancellation of removal. And NACARA contains no such amendment.

## B.    NACARA's Enactment Did Not Expand INA § 212(h)

Because NACARA does not reference any waiver provision, any effect it has on INA § 212(h) waivers must be implied. NACARA's text and structure reveal no implicit expansion of INA § 212(h)'s phrase "adjustment of status." Instead, it created a new mechanism that offers two distinct forms of relief, adjustment of status and cancellation of removal. As the BIA recognized, "separate provisions of NACARA specifically provide for adjustment of status and cancellation of removal as two distinct forms of relief." App. 6. NACARA's provision for cancellation of removal references the INA's provision for regular cancellation of removal, § 240A. NACARA § 203(b). Separately, NACARA

---

[6] Lopez's argument also creates redundancy. The INA's provision for ordinary cancellation of removal, § 240A, includes a special waiver for aliens victimized by domestic violence seeking cancellation and adjustment. 8 U.S.C. § 1229b(b)(5). Under Lopez's reading, § 212(h)'s phrase "adjustment of status" includes applications for cancellation of removal that would also result in adjustment of status, rendering the special waiver for battered applicants irrelevant. Other things being equal, we should be "reluctant to adopt a construction making another statutory provision superfluous." *Hohn v. United States*, 524 U.S. 236, 249 (1998); *see also* Scalia & Garner, *supra*, at 174–79 (discussing the surplusage canon).

10

§ 202(a) provides for "adjustment of status" relief and references the INA's provision for adjustment of status, INA § 245. NACARA § 202(a). Both show that NACARA preserves the INA's distinction between "cancellation of removal" and "adjustment of status" applications even while allowing cancellation of removal applications to result in adjustment of status. Far from impliedly amending INA § 212(h), Congress took care to leave it unaltered. As a result, the INA does not provide Lopez a path to cancelling the removal order against him.

## III.

An application for cancellation of removal under NACARA is not an application for adjustment of status under § 212(h) of the INA. So we will deny Lopez's petition for review.

11